IN THE MATTER OF JOHN W. NOONAN, AN ATTORNEY AT LAW.

Argued November 6, 1985—Decided April 3, 1986.

158

*Thomas J. McCormick*, Assistant Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Joseph C. Glavin, Jr.* argued the cause on behalf of respondent.

PER CURIAM.

We concur with the recommendation of the Disciplinary Review Board (DRB) in this matter that the respondent John W. Noonan's temporary suspension from the practice of law for a period of more than four years is sufficient discipline. We add the following in order to clarify the treatment of the misappropriation issue involved in this case.

In addition to the complaints against respondent initiated by numerous complainants, the Division of Ethics and Professional Services (DEPS), the predecessor of the Office of Attorney Ethics, filed a complaint that charged misappropriation (in

addition to the often related charge of failure to maintain financial books and records in accordance with Rule 1:21–6(c)). In connection with the misappropriation charges, the District Ethics Committee found numerous disciplinary violations but, in the words of the DRB, "found no evidence that respondent intentionally tried to defraud his clients or misappropriate funds." After noting that finding, the DRB quoted from a portion of the District Ethics Committee determination in which that Committee referred to the many problems respondent faced at the time of the alleged misappropriations, *e.g.*, alcoholism, extremely heavy workload, the quoted portion also noting that while these pressures seriously affected respondent's ability to practice law, he now appears to have "gotten his life together." The DRB's direct treatment of the misappropriation issue consists of a statement that it "agrees with the District Ethics Committee that there is no evidence presented indicating that respondent intentionally defrauded his clients." The DRB, thereafter, without indicating whether its comments were addressed to the misappropriation charges or to the other charges (basically gross negligence and failure to carry out contracts of employment, DR 6–101(A)(1) and DR 7–101(A)(2)), noted respondent's problems, that the purpose of discipline is not to punish the offender, the relevancy of mitigating factors in determining whether disbarment is appropriate, and finally concluded that "the record does not support a conclusion that respondent's misconduct was based on dishonesty, venality, or immorality. Respondent's misconduct does not lead to a conclusion that his 'good character and fitness have been permanently or so irretrievably lost' ... as to warrant disbarment." Finally, after pointing to respondent's prior good record and reputation and contrition, the DRB notes that there was apparently full reimbursement.

The DRB's statements about the District Ethics Committee's findings concerning misappropriation, as well as its own findings on that subject, left some doubt as to exactly what factual findings had been made. The misappropriation that will

trigger automatic disbarment under *In re Wilson*, 81 *N.J.* 451 (1979), disbarment that is "almost invariable," *id.* at 453, consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking. It makes no difference whether the money is used for a good purpose or a bad purpose, for the benefit of the lawyer or for the benefit of others, or whether the lawyer intended to return the money when he took it, or whether in fact he ultimately did reimburse the client; nor does it matter that the pressures on the lawyer to take the money were great or minimal. The essence of *Wilson* is that the relative moral quality of the act, measured by these many circumstances that may surround both it and the attorney's state of mind, is irrelevant: it is the mere act of taking your client's money knowing that you have no authority to do so that requires disbarment. To the extent that the language of the DRB or the District Ethics Committee suggests that some kind of intent to defraud or something else is required, that is not so. To the extent that it suggests that these varied circumstances might be sufficiently mitigating to warrant a sanction less than disbarment where knowing misappropriation is involved, that is not so either. The presence of "good character and fitness," the absence of "dishonesty, venality, or immorality"—all are irrelevant. While this Court indicated that disbarment for knowing misappropriation shall be "almost invariable," the fact is that since *Wilson*, it has been invariable.[1]

Because of this ambiguity, we questioned counsel for the OAE who prosecuted the case before us closely on this issue, especially since the OAE took the position that respondent should be disbarred. That questioning revealed that the OAE's position was not that knowing misappropriation had been estab-

---

[1] We decided in *In re Smock*, 86 *N.J.* 426 (1981), that the *Wilson* rule, given its severity and inflexibility, should not be applied retroactively.

lished, but rather that respondent's negligence in handling money was sufficiently gross to warrant disbarment even if he did not *know* it was client's money. That is *not* the rule of *Wilson*. Counsel for the OAE not only interpreted the findings of the District Ethics Committee and the DRB as the equivalent of a finding that there was *not* any knowing misappropriation, thereby reinforcing our similar understanding of the finding, but also conceded that the record could not support a finding of knowing misappropriation. It is our concurrence with that understanding that leads to our acceptance of the DRB's recommendation rather than the imposition of disbarment.

What follows is the decision and recommendation of the DRB.

This matter is before the Board based upon a presentment and a report recommending a private reprimand filed by the District V (Essex County) Ethics Committee. The matters were consolidated for hearing before the Board.

The facts underlying these complaints are as follows:

1. CHARLES BONNAR

Respondent was retained to represent at trial Charles M. Bonnar who was charged with murder. Mr. Bonnar was convicted on May 18, 1977 of second degree murder and sentenced to 18 to 22 years imprisonment. Respondent was paid $3,800 by Mr. Bonnar's parents to file an appeal. Although Respondent filed a notice of appeal, he never filed a supporting brief. The appeal was ultimately dismissed by the Appellate Division on May 15, 1978 for lack of prosecution. Mrs. Bonnar first learned of the dismissal when she contacted the Clerk's Office. When she confronted Respondent, he assured her a mistake had been made and he had not been notified that briefs had to be filed by a certain date. Later Respondent told the Bonnars that he would file a motion for reduction of sentence, but failed to do so.

When this matter was heard by District Ethics Committee, Respondent maintained he was having personal problems at that time and was not able to perfect the appeal. He did not feel either an appeal or a motion to reduce sentence would have been successful and he could not have filed this motion while the appeal was pending. He said that when the appeal was dismissed he was too embarrassed to file the motion to reduce sentence. The District Ethics Committee found Respondent violated *DR* 6-101(A)(1) by neglecting a legal matter in such a manner his conduct constituted gross negligence and *DR* 7-101(A)(2) by failing to carry out a contract of employment.

2. THOMAS MEEHAN

After Thomas Meehan was involved in an automobile accident on September 3, 1969, he retained Respondent to represent him in filing a lawsuit against the

other motorist who had no automobile insurance coverage. The motorist could not be located and the civil action was dismissed for lack of prosecution. Respondent did not believe this was a problem because he learned that Mr. Meehan's insurance policy had a provision which protected him against uninsured motorists. The insurance company, however, was not willing to honor Mr. Meehan's claim because of the dimsissal of the lawsuit against the other motorist and his disappearance had compromised its right to subrogation. Respondent did not reinstate the original lawsuit and did not file a lawsuit against the insurance company. At the District Ethics Committee Respondent maintained this matter had been handled by another attorney in his office who had died in 1974. The Committee concluded Respondent violated *DR* 6-101(A)(1) and *DR* 7-101(A)(2).

3. MILTON DUBIN

Respondent was retained by Milton Dubin who was injured in a bus accident on June 8, 1971. Although Respondent assured Mr. Dubin the case had been settled, Mr. Dubin did not receive any money for about six years. After Mr. Dubin filed an ethics complaint, Respondent paid him $3,400 from personal funds in February 1979. Based upon Respondent's answer to the ethics complaint the Committee concluded that Respondent had not prosecuted the Dubin lawsuit to a conclusion. It found Respondent violated *DR* 6-101(A)(1) and *DR* 7-101(A)(2).

4. CARMEN MATORO

Respondent was retained in 1964 by Carmen Matoro to represent him in a personal injury action for damages. Respondent did not institute the civil action within the statute of limitations and failed to inform Mr. Matoro about the status of his claim. In July 1978, about 14 years after the date of the accident, Respondent agreed to pay Mr. Matoro $5,000 to compensate him for this accident case and other cases for which Mr. Matoro had retained Respondent. Although Respondent promised to pay the full amount by the end of 1978, Mr. and Mrs. Matoro testified at the July 15, 1980 Ethics Committee hearing they still had not received the full amount. The Ethics Committee concluded Respondent violated *DR* 6-101(A)(1) and *DR* 7-101(A)(2).

5. HELEN FINN

Respondent and Helen Finn had been appointed as co-executors of the estate of Annabel Hurley who died October 29, 1974. Respondent, a cousin of decedent, also acted as attorney for the estate. Included in the provisions of the will was a bequest to Mrs. Finn for $5,000. Mrs. Finn said Respondent did not consult with her on matters involving the estate. The state inheritance tax return was filed nine months late. When Respondent sold some stock belonging to the estate, a bank which had a claim against Respondent personally, placed a lien on the proceeds. Respondent claimed he kept Mrs. Finn informed about the estate's transactions and the delay in filing the state tax return was partially her fault. Concerning the lien on the stock sale, Respondent maintained that the brokerage firm was responsible for any loss of income incurred by the estate. The complainant, who was about 80 years old and residing in Florida, did not appear at the District Ethics Committee hearing on July 15, 1980. After considering the evidence, the Ethics Committee concluded Respon-

dent's conduct "though unquestionably dilatory, did not rise to the level of an ethics violation."

### 6. CORA GREINER

Cora Greiner filed an ethics complaint against Respondent in February 1977 alleging that following the death of her husband in May 1969 she had repeatedly urged Respondent to file her late husband's will for probate and to return to her the passbook on a small savings account containing about $2,000. Respondent denied he ever had a will for Mr. Greiner, but did concede he retained the passbook. After Mrs. Greiner filed her ethics complaint in November 1977 Respondent turned over to her the file and the passbook. The Ethics Committee concluded Respondent's conduct did not rise to the level of an ethics violation.

### 7. LEE GEBRIAN

Respondent was retained by Lee Gebrian to handle the estate of Mary J. Alberti. Respondent was charged with failing to file the appropriate papers with the New Jersey Transfer Inheritance Tax Bureau. As a result, the Inheritance Tax Department placed an estimated assessment against the estate for $4,784.78. A Superior Court judgment was later entered against Lee Gebrian for that amount. Respondent maintained he had estimated the amount of tax due and paid the Inheritance Tax Department $750 by an estate check in 1972. He did not, however, file a tax return. A completed tax return was filed either in 1979 or 1980 by an attorney Respondent had retained. No penalty or additional assessment was levied against the estate as a result of the late filing of the tax return. The Ethics Committee concluded that Respondent violated *DR* 1–102(A)(1) and (6), *DR* 6–101(A)(1) and *DR* 7–101(A)(2).

### 8. MARIE SCHAEFTER

Respondent did not file a State Inheritance tax return although he had been notified by letters from the State Transfer Inheritance Tax Bureau that a total of $4,522.51 should have been paid to the State by January 9, 1980.

The Tax Bureau filed a Certificate of Debt against Respondent, individually and as executor and beneficiary of the estate. Respondent filed a tax return in August 1982 and a warrant of satisfaction was filed in October 1982. Since there was no tax due no beneficiary of the estate paid any penalty or tax. Respondent was aware that a State Inheritance Tax Return had to have been filed within 8 months from the date of death. During the Ethics Committee hearing, Respondent stated that during this period he was involved in very lengthy, complicated trials and was having marital difficulties which he "very brilliantly compounded by drinking very heavily." The Ethics Committee concluded that Respondent violated *DR* 1–102(A)(6), *DR* 6–101(A)(1) and *DR* 7–101(A)(2).

### 9. DEPS COMPLAINT

On June 9, 1982 the then Division of Ethics and Professional Services (DEPS) filed a 10 count complaint against Respondent. He was charged with failing to maintain his books and records as required by *R.*1:21–6(b)(2) (Count 1); improper use of a trust account by maintaining a miscellaneous account as part of his clients' trust account (Count 2); misuse and misappropriation of funds in his

trust account by being out of trust for $657.27 (Count 3); $326.69 (Count 4); $3,261.01 (Count 5); misuse and misappropriation of $500 by transferring funds from one client's account for the benefit of another client (Count 6); failure to maintain $3,611.83 in trust for client (Count 7); misuse and misappropriation of $2,521.70 by not being able to account for these funds belonging to a client (Count 8); improper use of a trust account by maintaining tax reserve account as part of the clients' trust account (Count 9); and failure to maintain his financial books and records as prescribed by *R*.1:21-6(c) (Count 10). The Ethics Committee found Respondent guilty of 10 counts of violating *DR* 1:102(A)(1) and (6) by engaging in conduct that adversely reflected on his fitness to practice law and 10 counts of violating *DR* 9-102 by not properly preserving the identity of funds of a client. It also found that he violated *R*.1:21-6 because of improper record keeping. The Committee found no evidence that Respondent intentionally tried to defraud his clients or misappropriate funds. The Committee further found:

> The record is replete with the personal problems being confronted by the respondent during the period of time that is covered by these various complaints. The respondent admitted that he was an alcoholic, that he had taken on more trial work than he could possibly handle and that he was having serious marital problems. . . .

> It is apparent that during this period of respondent's life, he was unable to cope with the pressures of the profession and was not in a position to operate and maintain a law practice. However, the Respondent through his attorney and through questioning by various members of the panel, it appears that he has gotten his life together and realizes that his actions in the past were wrong, that he not only created a problem for himself but he has created a problem for other members of the Bar of the State of New Jersey. [Ethics Committee Report, January 29, 1985.]

Respondent was temporarily suspended from the practice of law on June 3, 1981.

## CONCLUSION AND RECOMMENDATION

Upon a review and analysis of a full record, the Board is satisfied that the conclusions of the District Ethics Committee in finding unethical conduct on the part of Respondent are fully supported by clear and convincing evidence.

The complaints against Respondent reveal a pattern of neglect of clients' legal problems. In Bonnar, he failed to perfect a criminal appeal. In Meehan and Dubin, he failed to follow through with civil litigation and in Matoro he did not file a civil suit. In the Gebrian and Schaefter matters, he failed to properly administer these two estates. The Board finds Respondent neglected legal matters in such a manner that his conduct constituted gross negligence, *DR* 6-101(A)(1) and that he failed to carry out contracts of employment, *DR* 7-101(A)(2). His conduct adversely reflected on his fitness to practice law, *DR* 1-102(A)(1) and (6). As a result of a DEPS audit of Respondent's trust account and records, the Board finds that he failed to maintain his books and records as required by *R*.1:21-6. The Board further finds that Respondent failed to

preserve the identity of clients' funds, *DR* 9–102 and this adversely reflected on his fitness to practice law, *DR* 1–102(A)(1) and (6). The Board agreed with the District Ethics Committee that there was no evidence presented indicating that Respondent intentionally defrauded his clients. Respondent's secretary testified that many accounting problems were caused because she maintained a separate account so Respondent would not have access to the money. She did this so there would be operating funds available for office expenses.

Respondent, at the Ethics Committee hearing and before this Board, acknowledged his acts of misconduct. He maintained that they came about because of his involvement with lengthy trials back to back which kept him out of the office, that he was experiencing marital difficulties and was drinking heavily during that period.

The purpose of discipline is not to punish the offender. It is to protect the public from the attorney who does not meet the standards of responsibility of his profession. *In re Goldstaub*, 90 *N.J.* 1, 5 (1982); *In re Stout*, 75 *N.J.* 321, 325 (1978). Mitigating factors are relevant in determining whether the public interest requires the ultimate sanction of disbarment. Extenuating circumstances may demonstrate that there is little or no likelihood that the attorney will repeat the transgressions. *In re Hughes*, 90 *N.J.* 32, 36 (1982).

The record does not support a conclusion that Respondent's misconduct was based on dishonesty, venality, or immorality. Respondent's misconduct does not lead to a conclusion that his "good character and fitness have been permanently or so irretrievably lost," *In re Templeton*, 99 *N.J.* 365, 376–77 (1985), as to warrant disbarment.

Respondent was admitted to the bar in 1955. Respondent was twice publicly reprimanded and censured by U.S. Court of Appeals for the Third Circuit: On January 9, 1975 for failing to comply with court orders pertaining to the prosecution of an appeal and on January 23, 1975 for gross failure to comply with Appellate procedure rules in prosecution of an appeal. These incidents were within the same time period as Respondent's ethical infractions. The Board finds that the mitigating factors outweigh the aggravating factors. Respondent has fully reimbursed the Clients' Security Fund for the unearned retainers which it paid to clients. Respondent has had no prior ethical problems until this series of complaints were filed. He had a good reputation and has admitted that his conduct transgressed the rules. He has recognized the source of his problems and has actively and positively taken steps to resolve them.

The Board believes that Respondent's present term of temporary suspension, which has extended for more than four years, is sufficient discipline under all the circumstances of this case.

The Board recommends Respondent be required to reimburse the Ethics Financial Committee for appropriate administrative costs.

For the reasons stated, we conclude that respondent's temporary suspension since June 3, 1981, constitutes a sufficient discipline. As a part of any application for restoration, respondent shall reimburse the Ethics Financial Committee for appro-

priate administrative costs. Additionally, we have concluded that the right of respondent to resume practice shall not be restored except under conditions assuring that he will be subject to the supervision of another attorney, both the conditions and circumstances surrounding that supervision, as well as the supervising attorney himself, to be satisfactory to the OAE and approved by the Court. Respondent's practice shall continue to be subject to such supervision until further Order of this Court.

So ordered.

*Decision and Recommendation of the*
*Disciplinary Review Board*

The Disciplinary Review Board having filed a report with this Court recommending that JOHN W. NOONAN of Newark, admitted to the bar of this State in 1955 and thereafter temporarily suspended by Order of this Court dated June 3, 1981, be declared eligible to apply for restoration to the practice of law, subject to certain enumerated conditions, and the Court having issued an order to show cause and having heard argument thereon, and good cause appearing;

It is ORDERED that JOHN W. NOONAN of Newark shall be eligible to apply for restoration to the practice of law; and it is further

ORDERED that respondent's restoration to the practice of law shall be conditioned upon his being supervised by another attorney, the nature and extent of that supervision, as well as the identity of the supervising attorney, to be satisfactory to the Office of Attorney Ethics and approved by this Court; and it is further

ORDERED that as a part of an application for restoration, respondent shall reimburse the Ethics Financial Committee for appropriate administrative costs arising out of this matter; and it is further

ORDERED that respondent's temporary suspension shall continue pending the further Order of this Court and that

during such time, he shall be restrained and enjoined from practicing law, and he shall continue to comply with Administrative Guideline No. 23 of the Office of Attorney Ethics.

*For suspension*—Chief Justice WILENTZ, and Justices CLIFFORD, POLLOCK, O'HERN, GARIBALDI and STEIN—6.

*Opposed* —none.