## IN THE MATTER OF SANFORD R. GUDGER, AN ATTORNEY-AT-LAW.

Argued October 20, 1986—Decided January 30, 1987.

*John J. Janasie*, Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

---

*Nathan Cholodenko* argued the cause on behalf of respondent.

PER CURIAM.

This matter comes before us on the recommendation of the Disciplinary Review Board (DRB or the Board) that respondent, Sanford R. Gudger, be disbarred. The Board found that respondent knowingly misappropriated clients' funds contrary to *DR* 9–102 and *In re Wilson*, 81 *N.J.* 451 (1979). The Board found further "that respondent was guilty of gross negligence, contrary to *DR* 6–101(A)(1) and that his misconduct exhibited a general pattern of neglect, contrary to *DR* 6–102(a)(1), (3), (4), (5), and (6), and *DR* 3–101(b)." Although we entered an order on January 30, 1980, suspending respondent from the practice of law, he continued to practice, and during the period of suspension even used clients' funds for his own purposes. Consequently, the DRB concluded that "[d]isregard of the Court's order of suspension would in itself require severe discipline. See *Matter of Goldstein*, 97 *N.J.* 545 (1984)."

We need not relate the details supporting the charges of gross negligence or misconduct exhibiting a general pattern of neglect. Similarly, with respect to the charge of practicing law while under suspension, we note only that respondent was convicted on April 9, 1981, by a jury of theft by deception, contrary to *N.J.S.A.* 2C:20–4, for falsely representing himself as a licensed attorney. We do not dwell on those matters because, as the DRB recommended, respondent's admitted knowing misappropriation of trust funds compels his disbarment.

The DRB found:

In early 1979, respondent was retained by Mr. and Mrs. Reddick in conection with the purchase of a home. The purchase was financed by a first mortgage of $35,300. At the closing in February 1979, respondent held in escrow $25,000 from the $35,300 to pay off a prior mortgage on the property. This mortgage could not be paid at that time because its closing costs had not been calculated. Two weeks later, respondent received the closing figures with interest. However, he did not issue a check to clear this lien. Chicago Title was required to pay this amount to satisfy the earlier mortgage.

In July 1979 a bank placed a lien on respondent's trust and personal accounts because he owed at least three creditors about $4,000. He issued a trust account check to Chicago Title on March 6, 1980 for $24,257.30. However, this check was dishonored because of insufficient funds. Chicago Title later obtained a judgment by default against respondent.

Respondent was suspended from the practice of law on January 30, 1980. During the ethics committee hearing, respondent admitted using clients' funds for his own purpose. When respondent was asked what he did with the rest of the money in the trust account, he replied

Well, when I was suspended as of January, I kept dipping into my trust account illegally.

[Panel Chairman]: Did you keep dipping, or did you just take it out in toto right away?

[Respondent]: No, I kept dipping. I—well, I don't know whether anybody here realizes, you know what it takes to operate a law office as a private practioner [sic]. Ever since I've been in practice, it quite truthfully it's been a dollar-to-dollar proposition. Somebody—a client would bring in $200, and I'd probably have to pay that out to my secretary, or a client would bring in $300, and I'd have to pay off my book bill. When I first went into practice, I went in, quite candidly, I didn't try to borrow any money from anybody.

Respondent stated that he had used about $20,000 of clients' funds. During the Spring of 1980 he paid his son's tuition of $4,500 from his trust account. When respondent appeared before this Board, he stated

I violated my trust account to maintain my office as well as sustain myself. I kept thinking the suspension was only temporary and that I could replace the money when I was reinstated. Of course that opportunity never came. (Footnote and transcript references omitted.)

## Accordingly, the DRB concluded:

Upon a review of the full record, the Board is satisfied that the conclusions of the ethics committee in finding unethical conduct on the part of respondent are fully supported by clear and convincing evidence.

Respondent readily acknowledged before both the ethics committee and this Board that he knowingly misappropriated clients' funds. He stated that after his suspension on January 30, 1980 he "kept digging into [his] trust account illegally." A knowing misappropriation triggers automatic disbarment. *In re Wilson*, 81 *N.J.* 451 (1979). "[T]he mere act of taking your client's money knowing that you have no authority to do so ... requires disbarment." *In re Noonan*, 102 *N.J.* 157, 159, 160 (1986). Such misconduct mandates *"per se* disbarment." See *In re Johnson*, [102] *N.J.* [504] (1986) (slip opinion at 10). Consequently, mitigating factors are not relevant. See *In re Noonan, supra.* See also *In re Brown*, [102] *N.J.* [512] (1986) and *In re Lennan*, 102 *N.J.* 518 (1986).

Our independent review of the record leads us to the inescapable conclusion that the findings and conclusions of the DRB are supported by clear and convincing evidence.

Respondent's name will be stricken from the rolls. He is to reimburse the Ethics Financial Committee for appropriate administrative costs, including the costs of transcripts.

So ordered.

## ORDER

It is ORDERED that SANFORD R. GUDGER of NEWARK, who was admitted to the bar of this State in 1972, be disbarred and that his name be stricken from the roll of attorneys of this State, effective immediately; and it is further

ORDERED that SANFORD R. GUDGER be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that respondent comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys; and it is further

ORDERED that respondent reimburse the Ethics Financial Committee for appropriate administrative costs.

*For disbarment* —Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed* —None.