579 A.2d 1228

IN THE MATTER OF JOHN P. RUSSELL, AN
ATTORNEY AT LAW.

Argued May 21, 1990—Decided September 21, 1990.

*William R. Wood*, Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*John P. Doran* argued the cause for respondent.

PER CURIAM

These ethics proceedings commenced in October, 1982, when the grievant, Margaret Calia, registered a complaint with the District VI Ethics Committee against respondent, John P. Russell, a member of the bar since 1964. Russell had represented Calia in connection with the sale of her residential property. She asserted that he was "unreasonably withholding a part of the proceeds of the sale." After extensive hearings the local Committee determined that respondent had misappropriated his client's funds in violation of *DR* 9–102(B)(4), and recommended public discipline. Concluding that respondent had knowingly misappropriated client's funds, the Disciplinary Review Board (DRB) unanimously recommended that he be disbarred. Our

independent review of the record leads us to accept that recommendation.

I

On May 26, 1982, respondent represented Margaret Calia, an elderly widow and long-time friend and client, in the sale of her Jersey City home. Because Calia had already moved to New York to be with her family, she did not attend the closing and therefore did not receive her proceeds from the sale that day. Respondent undertook to represent her interests at the closing in her absence, and agreed to pay her outstanding bills and send her the balance within a few weeks.

On the day following the closing, May 27, 1982, respondent deposited in his trust account the proceeds from that closing in the amount of $47,717. Prior to that deposit the balance in respondent's attorney trust account was $71.14. Because Russell confined himself generally to a criminal practice, there was little activity in his trust account, and only rarely did substantial amounts pass through it.

On May 28, 1982, respondent deposited two additional checks in his trust account, one for $795.57 representing additional proceeds from the Calia sale, and one for $14,000, for a total of $14,795.57. Russell claims that the $14,000 consisted of $10,000 from his sister, Kathleen E. Walsh, toward the purchase price of a new home she was about to buy, and $4,000 of respondent's own funds, which he needed to pay a $5,000 obligation to a disgruntled client, Ralph Sheprow. The Walsh real-estate transaction involved the sale of the home in Kearny owned by respondent's sister and her husband, John P. Walsh, and the purchase of a new home in Wayne. Russell was representing his sister and her husband in both transactions, although he did not attend the closing of either, being inexperienced in real estate matters. His friend, William J. Scheurer, Esq., appeared at the closings. The sale of the Kearny home was scheduled for June 3, 1982, and the purchase of the Wayne property was

scheduled for June 4, 1982. In addition, because Sheprow was pressing respondent, he knew he had to pay that $5,000 obligation promptly.

Respondent's car was totaled in an accident on May 29, 1982. He says, and Ms. Walsh confirms, that he asked his sister's permission to use some of the $10,000 that he was holding in trust for her toward the purchase of a new car. He wrote a check on May 31, 1982, on his personal account for $5,000 payable to Ableson Olds, Inc., for the new automobile. Because the balance in his personal account was just under $1,300, Russell drew a check on his trust account, dated June 2, 1982, payable to himself in the amount of $6,000 and deposited it in his personal account to cover the check for the car dealer. That check cleared on June 3, 1982, and the bank record shows that the $6,000 trust account check and the check to the automobile dealer were credited and debited respectively to respondent's personal account on June 3, 1982.

On the same date, Russell arranged for a certified check payable to Ralph Sheprow for $5,000, which was deducted from his trust account on that day.

To recapitulate: (a) The Calia closing took place on May 26, 1982, and produced net proceeds of about $44,000. (b) On May 27 and 28, 1982, respondent deposited $48,512 in his trust account on behalf of Calia. (c) On May 28, 1982, respondent also deposited in his trust account $14,000—$10,000 came from his sister towards the purchase of a new home, and $4,000 from respondent's own funds for part of the $5,000 he needed to satisfy a badgering Sheprow. (d) On June 2, 1982, respondent wrote to himself, as payee, a trust account check for $6,000, which he then deposited in his personal account on June 3, 1982. (e) On the same day that Russell deposited the $6,000 check in his personal account, the $5,000 check payable to Ableson Olds, cleared that same account.

Respondent originally explained that he had transferred $6,000 out of the trust account and into his personal account so

that his secretary, who was not empowered to sign trust account checks, would be able to pay certain outstanding bills for Calia. However, at the ethics hearing, both respondent and his secretary testified that it was Russell's practice to authorize her to sign checks in both his trust and business accounts. The secretary also maintained that she never signed a check without respondent's prior approval and consent. In fact, there were only four outstanding bills to be paid for Calia: the real estate broker's commission and three utility bills, totaling in all $4,359.60. Respondent paid the real-estate commission two weeks after the closing, on June 9, 1982, and he paid the utility bills on July 28, 1982, two months following the closing. He did not, however, send any part of the net proceeds of the sale to Calia until August 12, 1982, two-and-a-half months after the closing, at which time he sent her a $36,000 check. In November 1982, five-and-a-half months after the closing, respondent finally sent his client the balance of the net proceeds in the amount of $8,000, paid from his business-account funds.

As the DRB explained in its Decision and Recommendation, from May 27 through August 12, 1982, respondent should have been holding Calia trust funds in excess of $44,000. On June 9, 1982, the trust account balance fell to $42,618.86; on June 10, 1982, it went down to $38,819.61; and by June 11, 1982, the balance was $38,245.71. For the succeeding two months, the balance remained slightly above $36,000. Therefore, between mid-June and mid-August 1982, respondent was $8,000 out-of-trust with regard to the Calia funds, and he remained out-of-trust by that amount from August 12 until November 9, 1982, when he finally sent Calia the balance of the sale proceeds. On August 12 he sent the client $36,000, with a letter that said he was "holding the balance due, which I estimate to be approximately $6,000.00 for an additional 30 days to clear all outstanding bills which may still be." As respondent admitted before the local Committee, however, he did not send Calia the entire net proceeds because he did not have sufficient funds in his trust account. Before the DRB he acknowledged that he had

lied to the client because he had been "embarrassed both emotionally and financially at the time."

Respondent admitted that he had invaded Calia's funds in his trust account, but said that he had done so inadvertently, blaming his dereliction on poor bookkeeping. In addition, he said that he had been surprised that his sister had needed the entire $10,000 to close on her new home. In fact, the purchase of the new home required all of the proceeds from the sale of the Kearny home, plus some additional funds.

Based on the foregoing the DRB concluded that respondent had knowingly misappropriated Calia's funds.

## II

The DRB did not believe respondent's contention that the $6,000 withdrawn from his trust account on June 3, 1982, was not charged against Calia's trust funds but was covered by a loan from his sister of $10,000 held in his trust account on her behalf. Specifically, the Board found it "incredible" that respondent's sister would give him "carte blanche" to avail himself of whatever trust monies were being held in her behalf; and that if Ms. Walsh did not know how much her brother needed, she could not possibly have known that she had a sufficient amount to cover his needs. Moreover, because he was not personally involved in the handling of the title closings, respondent could not have known how much Ms. Walsh needed for the purchase of the Wayne property. The DRB found it particularly significant that respondent's secretary testified that she had written the trust-account check for $6,000, payable to Russell, and had signed his name at his direction, and that he had told her to charge the $6,000 to the Calia closing, at the same time informing her that the $6,000 was needed to put a deposit on his new automobile. Respondent's credibility was not enhanced by his telling the client, in August, 1982, that he was withholding $6,000 to pay outstanding bills. He knew that to be untrue: the bills had already been paid. Moreover, when,

according to his version, he "discovered" the shortfall, respondent made no effort to replenish the funds or to work out a schedule of payments with the client or otherwise acknowledge the disparity.

We agree with the DRB that nothing supports respondent's defense that his invasion of Calia's funds resulted from inadvertence and poor records. This is a clear case of knowing misappropriation, defined in *In re Noonan*, 102 *N.J.* 157, 159–60, 506 *A.*2d 722 (1986), as "a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." There is absolutely no reason in this case to avoid the almost-invariable disbarment rule of *In re Wilson*, 81 *N.J.* 451, 409 *A.*2d 1153 (1979).

Respondent is disbarred. He is ordered to reimburse the Ethics Financial Committee for appropriate administrative costs.

So ordered.

## ORDER

It is ORDERED that JOHN P. RUSSELL of JERSEY CITY, who was admitted to the bar of this State in 1964, be disbarred and that his name be stricken from the roll of attorneys of this State, effective October 15, 1990; and it is further

ORDERED that JOHN P. RUSSELL be and hereby is permanently restrained and enjoined from practicing law; and it is further

ORDERED that JOHN P. RUSSELL comply with Administrative Guideline No. 23 of the Office of Attorney Ethics dealing with disbarred attorneys; and it is further

ORDERED that JOHN P. RUSSELL reimburse the Ethics Financial Committee for appropriate administrative costs.

*For disbarment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.