The PEOPLE of the State of
Colorado, Complainant,

v.

Kjaere ANDREWS, f/k/a Karen
McLaughlin, Respondent.

No. 02PDJ097.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Aug. 6, 2003.

Attorney Registration. The Hearing
Board suspended Respondent Kjaere An-
drews, f/k/a Karen McLaughlin, attorney
registration number 14895 from the practice
of law for a period of six months in this
reciprocal discipline matter from the State of
Vermont. The Supreme Court of Vermont
suspended respondent for a period of six
months, holding that respondent violated the
following Vermont Rules of Professional Con-
duct; 1.5(b)(the basis or rate of fee shall be
communicated in writing), 1.15(a)(an attorney
shall hold client's property separate from
attorney's own property), 1.15(a)(every attor-
ney in private practice who receives funds of
a client shall maintain a trust accounting
system), and 1.16(d)(upon termination a law-
yer shall refund any advance payment of fee
not yet earned). The People did not seek a
harsher sanction for respondent's conduct
constituting knowing misappropriation of
client funds under the Rules of Professional
Conduct in Colorado; accordingly the Hear-
ing Board imposed the same sanction im-
posed by the sister jurisdiction, finding that a
harsher sanction could not be imposed where
respondent lacked adequate notice pursuant
to C.R.C.P. 251.21(d). Respondent was or-
dered to pay the costs of the disciplinary
action.

Opinion by Presiding Disciplinary Judge
ROGER L. KEITHLEY and Hearing Board
members, JERRY D. OTERO and
MARILYN L. ROBERTSON, both members
of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

### SANCTION IMPOSED: ATTORNEY SUSPENDED FOR SIX MONTHS

A sanctions hearing pursuant to C.R.C.P.
251.15 was held on April 15, 2003 in this
default proceeding before the Presiding Dis-
ciplinary Judge ("PDJ") and two hearing
board members Jerry D. Otero and Marilyn
L. Robertson, both members of the bar.
Terry Bernuth, Assistant Attorney Regula-
tion Counsel, represented the People of the
State of Colorado (the "People"). Kjaere
Andrews ("Andrews"), the respondent, did
not appear in person or by counsel.

The Complaint in this action was filed No-
vember 7, 2002. The People filed a proof of
attempted service with this court on Novem-
ber 20, 2002, establishing that the Citation
and Complaint were sent via regular and
certified mail to Andrews' last known ad-
dress on November 7, 2002, and were re-

turned with no forwarding address available. Andrews did not file an Answer to the Complaint. Service was therefore proper pursuant to C.R.C.P. 251.32(b). On February 3, 2003, upon the People's motion, the PDJ entered an Order granting default. As a result of the Order granting default, all factual allegations set forth in the Complaint were deemed admitted and all rule violations set forth in the Complaint were deemed established pursuant to C.R.C.P. 251.15(b).

This is a reciprocal discipline matter from the State of Vermont brought pursuant to C.R.C.P. 251.21. C.R.C.P. 251.21(d) requires that in a reciprocal discipline matter from another jurisdiction, if the rules of professional conduct governing the attorney in Colorado would warrant a substantially different discipline than that warranted in the sister jurisdiction, the People must provide notice of the intent to seek harsher discipline in the Complaint. Claim III of the Complaint provided notice to Andrews that the People would seek identical discipline to the discipline imposed in Vermont.

At the sanctions hearing, the People's exhibits 1 through 9 were offered and admitted into evidence. Karen L. Bershenyi testified on behalf of the People. The Hearing Board considered the People's argument, the facts established by the entry of default, the exhibits admitted, the testimony of the witness, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

Andrews has taken and subscribed the oath of admission, was admitted to the bar of the Supreme Court of Colorado on October 28, 1985 and is registered upon the official records of this court, registration No. 14895. Andrews is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).[1]

All factual allegations set forth in the Complaint were deemed admitted by the entry of default, and are therefore established by clear and convincing evidence. *See* Complaint attached hereto as exhibit "A." The violations set forth in the Complaint were also deemed established by the entry of default.

On September 28, 2001, the State of Vermont Professional Responsibility Board entered a judgment suspending Andrews from the practice of law for a period of six months and one day. In Vermont, a suspension for a period of time greater than six months requires a formal reinstatement proceeding. On October 31, 2001, the order became final and the Supreme Court of Vermont suspended Andrews for a period of six months and one day effective on that date. A copy of the Order of Suspension is attached hereto as Exhibit "B."

This reciprocal discipline matter arises from Andrews' representation of Corylinn Jenne ("Jenne") commencing in June 2000, regarding Jenne's divorce. Andrews and Jenne agreed to a rate of $50 per hour which was not reduced to writing. Jenne paid Andrews $1,000 as a retainer. Andrews did not maintain a trust account and deposited the retainer into her personal or business account. Within a few weeks, Jenne notified Andrews that she wanted to represent herself *pro se* and requested an accounting and refund of the balance of the retainer.

Andrews did not have funds available to return the unused portion of the retainer to the client: she had spent the retainer on her own personal or business expenses. In July 2000, Andrews sent a letter and final bill to Jenne, informing her that the bill reflected an hourly rate of $100, instead of the agreed-upon $50 hourly rate. Andrews did not discuss the increased rate with her client. After applying the increased rate, Andrews indicated in the letter that she owed Jenne $150.75 which she later paid to Jenne. Jenne accepted the $150.75 as partial payment of $575.35, the retainer balance at the $50 hourly rate. Despite her understanding that Jenne did not accept the partial payment as a resolution of her request for a refund, Andrews did not pay the balance due to Jenne, and used the funds for her own purposes.

---

**1.** Andrews has been administratively suspended in Colorado since November 1987 due to her failure to pay attorney registration fees.

## II. CONCLUSIONS OF LAW AND IMPOSITION OF SANCTION

The Complaint in this action seeks imposition of discipline under the reciprocal discipline provisions of C.R.C.P. 251.21. The Supreme Court of Vermont held that Andrews violated the following Vermont Rules of Professional Conduct; 1.5(b)(the basis or rate of fee shall be communicated in writing), 1.15(a)(an attorney shall hold client's property separate from attorney's own property), 1.15(a)(every attorney in private practice who receives funds of a client shall maintain a trust accounting system), and 1.16(d)(upon termination a lawyer shall refund any advance payment of fee not yet earned). The Complaint in the within matter alleged that Andrews' conduct constituted grounds for discipline pursuant to C.R.C.P. 251.21 in claim I. Claim II asserts that Andrews' failure to report her suspension in Vermont to the Office of Attorney Regulation Counsel constitutes grounds for discipline pursuant to C.R.C.P. 251.5(d) and C.R.C.P. 251.21(b) in claim II. Claim III provides notice to Andrews that the People did not intend to seek imposition of a sanction harsher than that imposed by Vermont. *See* C.R.C.P. 251.21(d)(stating that "[i]f the Regulation Counsel intends either to claim that substantially different discipline is warranted or to present additional evidence, notice of that intent shall be given in the Complaint"); *People v. Calder,* 897 P.2d 831, 832 (Colo.1995)(analyzed under C.R.C.P. 241.17(d), the predecessor to C.R.C.P. 251.21(d) and stating that in a reciprocal discipline case, the Supreme Court imposes the same discipline as that imposed in the foreign jurisdiction unless certain exceptions exist.)[2]

A final adjudication in another jurisdiction of attorney misconduct constituting grounds for discipline is, for purposes of attorney disciplinary proceedings in Colorado, sufficient to conclusively establish such conduct. *See* C.R.C.P. 251.21(a). The Order of the Supreme Court of Vermont constitutes such a final order.

Pursuant to C.R.C.P. 251.21(d)(4), the misconduct proved by the Order of the Supreme Court of Vermont warrants a substantially different form of discipline in Colorado. *See, e.g., People v. Varallo,* 913 P.2d 1, 11 (Colo.1996)(stating that "[k]nowing misappropriation [for which the lawyer is almost invariably disbarred] 'consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking,' " *citing In re Noonan,* 102 N.J. 157, 160, 506 A.2d 722 (1986)). Because no notice was provided by the People, the Hearing Board cannot impose a greater sanction than that imposed by the State of Vermont. *See also People v. Apker,* 67 P.3d 23, 25 (Colo.O.P.D.J.2003)(hearing board finding that disbarment was the appropriate sanction under Colorado law for attorney's knowing conversion of client property in reciprocal discipline action from the State of Arizona where respondent was suspended from the practice of law for a period of six months and one day); *People v. Costa,* 56 P.3d 130, 134 (Colo.O.P.D.J.2002)(hearing board finding that disbarment was appropriate sanction under Colorado law for attorney's making a material misrepresentation to the court, neglecting a client's matter, failing to communicate with client, and knowingly failing to obey court orders in reciprocal discipline action where attorney was formally reprimanded and placed on probation by the State of New Mexico). Accordingly, Andrews is suspended for a period of six months with the requirement of a reinstatement proceeding.

---

**2.** C.R.C.P. 251.21(d) provides in relevant part:

At the conclusion of proceeding brought under this Rule, the Hearing Board shall issue a decision imposing the same discipline as was imposed by the foreign jurisdiction, unless it is determined by the Hearing Board that:

(1) The procedure followed in the foreign jurisdiction did not comport with requirements of due process of law;

(2) The proof upon which the foreign jurisdiction based its determination of misconduct is so in-

firm that the Hearing Board cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction;

(3) The imposition by the Hearing Board of the same discipline as was imposed by the foreign jurisdiction would result in grave injustice; or

(4) The misconduct proved warrants that a substantially different form of discipline be imposed by the Hearing Board.

## III. ORDER

It is therefore ORDERED:

1. KJAERE ANDREWS, attorney registration number 14895 is suspended from the practice of law for six months, effective thirty-one days from the date of this Order. If Andrews seeks reinstatement, she must comply with the reinstatement proceedings set forth in C.R.C.P. 251.29(c).

2. Andrews is ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

### EXHIBIT A

Terry Bernuth, Assistant Regulation Counsel, John S. Gleason, Regulation Counsel, Denver, Attorneys for Complainant.

### COMPLAINT

This complaint is filed pursuant to the authority of C.R.C.P. 251.14 and 251.21, and it is alleged as follows:

### JURISDICTION

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 28, 1985 as Karen McLaughlin, and is registered upon the official records of this court, registration no. 14895. She is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered home address is P.O. Box 1064, Stowe, VT 05672. The respondent was administratively suspended from the practice of law in Colorado on November 6, 1987 for failure to pay registration fees. In 1992, the respondent petitioned the Colorado Supreme Court for a waiver of active registration fees from 1987 to 1992 and a name change to Kjaere Andrews. The Court granted the respondent's requests and she was placed on inactive status and ordered to pay inactive registration fees for those years. The respondent failed to pay the inactive registration fees. The respondent's record at Attorney Registration reflects that she has been administratively suspended since November 6, 1987.

### CLAIM I

#### [Reciprocal Action for Revocation–C.R.C.P. 251.21]

2. The respondent was licensed to practice law in the state of Vermont on or about December 17, 1981.

3. On September 28, 2001, a hearing panel of the professional responsibility board of the Supreme Court of Vermont recommended suspension of respondent's license to practice law for six months and one day for conduct in violation of her duties and obligations as a lawyer.

4. That recommended suspension became a final decision of the Supreme Court of Vermont when no appeal was taken by either party and the Supreme Court did not order review on its own motion. The order of suspension was effective October 31, 2001.

5. The hearing panel's decision was a final adjudication of the respondent's misconduct in Vermont, which constitutes grounds for discipline in Colorado, pursuant to C.R.C.P. 251.21(a). Exhibit A, which is a certified copy of the final decision of the hearing panel which became the order of the Supreme Court of Vermont conclusively establishes the respondent's misconduct pursuant to Vermont Supreme Court Administrative Order 9, Rule 11.

6. In Vermont, in June 2000, the respondent was hired by Corylinn Jenne (the client) to represent her in a divorce action. The client paid the respondent $1,000 as a retainer. The respondent did not maintain a trust account and deposited the retainer into her personal or business account. After a few weeks, the client decided to handle the divorce case pro se and requested an accounting and refund of the balance of the retainer.

7. In July, 2000, the respondent sent a letter and final bill to the client informing the client that she was being charged an hourly rate of $100 rather than the $50 per hour rate that had been agreed upon between the client and the respondent. After applying the hourly rate of $100, the respondent indi-

cated in the letter that she owed the client $150.70 which was later paid to the client. The client accepted the $150.70 as partial payment of the amount she wanted refunded of $575.35, the retainer balance at the $50 per hour rate.

8. The respondent was charged with violations of the following Vermont Rules of Professional Responsibility: 1.5(b) (the basis or rate shall be communicated in writing), 1.15(a)(an attorney shall hold client's property separate from attorney's own property), 1.15A(every attorney in private practice who receives funds of a client shall maintain a trust accounting system), and 1.16(d)(upon termination, a lawyer shall refund any advance payment of fee not yet earned). The hearing panel deemed that those charges were admitted as a result of the respondent's default in the proceedings and found that the violations were proven by clear and convincing evidence.

9. The respondent's conduct in Vermont violates the following Colorado rules: Colo. RPC 1.5(b) (the basis or rate of the lawyer's fee shall be communicated in writing); 1.15(a) (an attorney shall hold client's property separate from attorney's own property) 1.15(f)(1) (every attorney in private practice shall maintain a trust account) and 1.16(d) (upon termination, a lawyer shall refund any advance payment of fee not yet earned).

### CLAIM II

[Failure to Report Discipline Imposed Pursuant to C.R.C.P. 251.21(b) and Failure to Respond Pursuant to C.R.C.P. 251.5(d) ]

10. Paragraphs 1 through 9 are incorporated herein.

11. The respondent failed to report to Colorado the discipline imposed by the Vermont Supreme Court in violation of C.R.C.P. 251.21(b) and failed to respond to the Regulation Counsel's request for investigation in violation of C.R.C.P. 251.5(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM III

[Notice Pursuant to C.R.C.P. 251.21(d) ]

12. Paragraphs 1 through 9 and 11 are incorporated herein.

13. The Vermont Supreme Court suspended the respondent for six months and one day stating, "At a minimum, a six-month suspension is necessary to protect the public, as no lesser sanction will require Respondent to demonstrate that she has acquired the fitness to act as a professional that she clearly lacks at present." Exhibit A, p. 7. In Vermont, a period of suspension that is greater than six months requires the respondent to apply for reinstatement. Vermont Supreme Court Administrative Order 9, Rule 22(D).

14. In reciprocal discipline proceedings, the same discipline of the other jurisdiction is usually imposed unless one of the following exceptions exists. *See People v. Nangle,* 973 P.2d 1271 (Colo.1999).

C.R.C.P. 251.21(d) states the four exceptions:

(1) The procedure followed in the foreign jurisdiction did not comport with requirements of due process of law;

(2) The proof upon which the foreign jurisdiction based its determination of misconduct is so infirm that the Hearing Board cannot, consistent with its duty, accept as final the determination of the foreign jurisdiction;

(3) The imposition by the Hearing Board of the same discipline as was imposed in the foreign jurisdiction would result in grave injustice; or

(4) The misconduct proved warrants that a substantially different form of discipline be imposed by the Hearing Board.

15. None of the above-cited exceptions apply in the present case. Therefore, the discipline imposed in Colorado should be identical to the Vermont discipline. Accordingly, the respondent should be suspended for a period of six months and be required to demonstrate at a reinstatement hearing that she has acquired the fitness to act as a professional, which is the standard required by the Vermont Supreme Court.

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5 and 251.21 and the Colorado Rules of Professional Conduct and that she be appropriately disciplined and assessed the costs of the proceedings.

## EXHIBIT B

### STATE OF VERMONT

### PROFESSIONAL RESPONSIBILITY BOARD

In Re: Kjaere Andrews, Esq.

PRB File. No.2001.014

*HEARING PANEL DECISION NO. 25*

A Petition of Misconduct was filed with the Office of the Professional Responsibility Board in the above referenced case on May 18, 2001. Respondent acknowledged receipt on May 18, 2001, but did not file an answer to the Petition of Misconduct. On June 13, 2001, Deputy Disciplinary Counsel filed a Motion to Deem Admitted the Charges and Allegations Set Forth in the Petition of Misconduct. Respondent did not respond to the Motion. On June 21, this hearing panel issued an Order granting the Motion to Deem Charges Admitted. The panel further requested submissions concerning sanctions to be filed with the Board within 30 days. On July 18, 2001, Deputy Disciplinary Counsel filed Recommended Conclusions of Law and Recommendation of Sanction. The Respondent did not file any submissions concerning sanctions. After notice to Respondent, a sanctions hearing was conducted by telephone on August 27, 2001. Deputy Disciplinary Counsel Beth DeBernardi attended by phone. Respondent did not participate in the hearing or otherwise respond to the notice of hearing.

### Findings of Fact

The findings of fact arc those that have been previously deemed admitted, as follows:

1. The Respondent Kjaere Andrews is an attorney licensed to practice law in the State of Vermont.

2. Respondent was admitted to practice before the Vermont Supreme Court on or about December 17, 1981.

3. In March or April of 2000, Complainant Corylinn Jenne consulted with Respondent about representation in a divorce.

4. On or about June 3, 2000, Complainant hired Respondent to represent her in a divorce.

5. At the time Respondent was hired by Complainant, the parties agreed to an hourly rate of $50 per hour.

6. The fee agreement was not reduced to writing.

7. Complainant paid Respondent the sum of $1,000.00 as a retainer.

8. At all times in question, Respondent did not have or maintain a client trust account.

9. Respondent deposited the retainer into her personal or regular business account.

10. Respondent did not complete the preparation of the complaint for divorce within the first few weeks of representation.

11. In mid-June of 2000, Respondent stated to Complainant that she might not be able to continue with the representation and that she was thinking of closing her law practice.

12. Complainant informed Respondent on or about June 22, 2000 that she would file her divorce *pro se.*

13. On or about June 22, 2000, Complainant asked Respondent for a final statement or accounting and for a return of the unearned portion of the retainer.

14. Respondent did not have funds available to return the unused portion of the retainer because she had spent the retainer on her own personal or business expenses.

15. Respondent and Complainant have a mutual friend, Ms. Moore.

16. When Respondent found herself short of funds to return the retainer to Complain-

ant, Respondent sought to borrow funds from Ms. Moore for this purpose.

17. Ms. Moore provided a loan to Respondent so that Respondent could return the retainer to Complainant.

18. The loan was in the amount of $1,000.00.

19. Respondent used the finds borrowed from Ms. Moore for her own personal or business expenses rather than to repay the retainer to Complainant.

20. On or about July 12, 2000, Respondent sent a letter and final bill to Complainant wherein she informed Complainant that, due to the unexpected early termination of the representation, Respondent would retroactively charge an hourly rate of $100 per hour, rather than the $50 per hour agreed upon.

21. Respondent's letter also informed Complainant that, applying an hourly rate of $100.00, Respondent owed Complainant a balance (refund) of $150.70.

22. Respondent's letter informed Complainant that Respondent was not able to refund the balance of the retainer "today" because there was not enough money in Respondent's checking account to do so.

23. Respondent stated in her letter that she would come up with the money for the refund as soon as possible, but no later than two weeks from now when Ms. Moore returns.

24. On or about July 28, 2000, Respondent sent the sum of $150.70 to Complainant by personal check.

25. On or about August 1, 2000, Complainant informed Respondent that she would accept the sum of $150.70 as partial payment of the fill amount due to her of $575.35.

26. To date, Respondent has not returned any other sums to Complainant.

27. Respondent has provided various reasons for why she doubled the hourly rate charged to Complainant.

28. One reason provided was Respondent's contention that Complainant was told

that the $50/hour rate was only available for representation lasting more than six months.

29. Respondent also contended that Complainant was told that the rate was subject to change based on Complainant's financial circumstances.

30. Respondent also contended that the doubling of the hourly rate was appropriate because Respondent's own financial circumstances were less favorable than Complainant's.

31. Complainant was never told at any time during the representation that the hourly rate would change for any of these reasons (or for any other reasons).

32. Respondent's failure to return the balance of Complainant's retainer exacerbated Complainant's already difficult financial circumstances and also prevented Complainant from filing her divorce *pro se* because she did not have sufficient funds to pay the court filing fee.

### Conclusions of Law

The charges, which have been deemed admitted and which the Hearing Panel concludes are supported by clear and convincing evidence, are that the Respondent violated Rules 1.5(b), 1.15(a), 1.15A, and 1.16(d) of the Vermont Rules of Professional Responsibility.

### Rule 1.5(b)

Rule 1.5(b) of the Vermont Rules of Professional Conduct provides as follows:

"When the lawyer has not regularly represented the client, the basis or rate of the fee shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation."

The facts deemed admitted clearly and convincingly establish that the Respondent failed to communicate the $100 per hour rate of the fee to her client before or within a reasonable time after commencing the representation. At the commencement of the representation, the Respondent told Complainant that she would charge her $50 per hour for all work done. Nothing was said to

suggest that this rate would or could change under differing circumstances. Less than six weeks later, in sending a final bill, Respondent retroactively *doubled* her hourly rate with no prior notice to her client and without giving the client any opportunity to agree or disagree with this substantial change in the agreed upon terms of representation. The Panel concludes, as a matter of law, that the Respondent violated Rule 1.5(b) of the Vermont Rules of Professional Conduct.

### Rule 1.15(a)

Rule 1.15(a) of the Vermont Rules of Professional Conduct provides as follows:

"A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in accordance with Rules 1.15A, B and C . . . ."

The facts deemed admitted clearly and convincingly establish that the Respondent did not hold Complainant's retainer separate from Respondent's own property, nor did she hold the finds in accordance with the rules governing client trust accounts. In fact, Respondent treated the funds *as* her own property, spending them on personal expenses before the fee was even earned. The Panel concludes, as a matter of law, that the Respondent violated Rule 1.15(a) of the Vermont Rules of Professional Conduct.

### Rule 1.15A

Rule 1.15A of the Vermont Rules of Professional Conduct requires every attorney in private practice or who otherwise receives client funds to maintain a trust accounting system which includes the specific features set forth in Rule 1.15A. Respondent has admitted that she did not use any trust account system, and the facts that have been deemed admitted clearly and convincingly establish that the Respondent failed to maintain the required trust account. The Panel concludes, as a matter of law, that the Respondent violated Rule 1.15A of the Vermont Rules of Professional Conduct.

### Rule 1.16(d)

Rule 1.16(d) provides as follows:

"Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and *refunding any advance payment of fee that has not been earned.*" (emphasis added)

The facts deemed admitted clearly and convincingly establish that Respondent did not hilly refund the advance payment of fee that had not been earned upon the termination of representation. The hourly rate agreed to by Respondent and Complainant was $50 per hour. Respondent performed 8.493 hours of work for Complainant, and accordingly the refund due amounted to $575.35 (ignoring for the moment the disputed 0.58 hours Respondent charged for preparing a bill and answering a telephone call from her client asking for the bill). Respondent did not refund that amount. Instead, Respondent calculated her fee at the arbitrarily imposed rate of $100 per hour, and refunded only $150.70 to Ms. Jenne. Accordingly, Respondent failed to refund a substantial portion of the retainer to Ms. Jenne in violation of Rule 1.16(d).

### Sanctions

The ABA Standards for Imposing Lawyer Sanctions ("ABA Standards") suggest that the sanctioning body consider four lhctors in determining the appropriate sanction, as follows: (1) the duty violated; (2) the respondent's mental state; (3) the actual or potential injury; and (4) any mitigating andlor aggravating factors. ABA Sanctions, § 3.0 (1991 Edition); *see also In Re Warren,* 167 Vt. 259, 261, 704 A.2d 789 (1997).

The Office of Disciplinary Counsel has recommended a suspension of at least six months in length. Applying the four factors to the Respondent's case leads the Hearing Panel to conclude that a six month suspension is the minimum appropriate sanction under these circumstances.

### The Duty Violated

Respondent has violated her duty of loyalty to her client, in that she failed to preserve the property of her client by expending client hinds for personal use. The ABA Standards note that the obligations owed to clients are the most important of all the ethical duties owed by lawyers. ABA Standards, § II, page 5.

Respondent has also violated the duties that she owes as a legal professional, in that she did not communicate or deal properly with the fee agreement and did not handle appropriately her obligations with regard to termination of the representation and return of her client's retainer. *See* ABA Standards, § II, pages 5–6 and § III .7.0.

In this case, where the primary duty violated was the duty owed to a client, a more serious sanction is indicated. The fact that Respondent's conduct also violated her duty as a professional compounds the gravity of the offense.

### Respondent's Mental State

The most culpable mental state is when the lawyer acts intentionally. In the case at hand, Respondent acted at least knowingly, and quite likely intentionally, when she failed to maintain any client trust account system and when she deposited and then spent her client's retainer without earning it. Moreover, by unilaterally and retroactively doubling her hourly rate, thereby substantially reducing the amount of her client's refund, Respondent must be found to have acted intentionally.

### Extent of the Injury

The potential for serious injury to clients arising out of Respondent's commingling of funds and her failure to maintain a trust account was enormous. In addition, there was actual injury to Complainant, who has still not received the balance of her retainer and who was unable to file her divorce complaint due to her lack of funds for the court filing fee. The amount due, about six hundred dollars, was a significant amount of money to Complainant at a time when she had just left her husband and couldn't afford a place to live. Given the specific facts of this case, including Complainant's financial vulnerability, the actual harm must also be considered serious, thus supporting the recommendation of a suspension as the appropriate sanction.

### Appropriate Sanctions

In cases involving the failure to preserve a client's property, suspension is appropriate when a lawyer "knows or should know that he *(sic)* is dealing improperly with client property and causes injury or potential injury to a client." ABA Standards, § 4.12. According to the comment to § 4.12, "[s]uspension should be reserved for lawyers who engage in misconduct that does not amount to misappropriation or conversion. The most common cases involve lawyers who commingle client fluids with their own, or fail to remit client funds promptly." *Id.* This is precisely the misconduct in which Respondent was involved. It is clear that Respondent commingled funds and failed to remit client funds promptly, as well as failed to maintain a trust account, and failed to prospectively inform her client of a change in the terms of billing. At a minimum, a six month suspension is necessary to protect the public, as no lesser sanction will require Respondent to demonstrate that she has acquired the fitness to act as a professional that she clearly lacks at present.

### Aggravating and Mitigating Factors

Under the ABA Standards, after determining which sanction is appropriate, the sanctioning body should then consider any aggravating or mitigating factors to see whether the proposed sanction should be adjusted up or down. In the case in hand, there are several aggravating factors.

First, the Respondent had a dishonest or selfish motive when she retroactively doubled her hourly rate for work done on behalf of Complainant, so that the amount of the refund due would be reduced from $575.35 to $150.70. A dishonest or selfish motive is an aggravating factor, as set forth in the ABA Standards, § 9.22(b).

Second, Respondent has never acknowledged the wrongfulness of her conduct, either to Complainant or to the Office of Disciplinary Counsel. Such failure to acknowledge the wrongful nature of one's conduct is an aggravating factor as set forth in the ABA Standards, § 9.22(g).

Third, the vulnerability of the Complainant is also an aggravating factor. During the time at issue, Complainant had recently left her husband, had no place to live except with friends, and had to borrow a substantial portion of the $1,000 retainer in order to commence her divorce. In fact, due to Respondent's failure to return the retainer, Complainant was unable even to file her divorce *pro se.* The vulnerability of the victim is also an aggravating factor, as set forth in the ABA Sanctions, § 9.22(h).

Fourth, Respondent was first admitted to the practice of law in Vermont on or about December 17, 1981 and thus has had almost nineteen years experience in the practice of law at the time in question; accordingly her "substantial experience in the practice of law" must be considered an aggravating factor as well. ABA Standards, § 9.22(i).

Finally, Respondent has still made no effort to return the balance of the retainer to Complainant, despite the complaint to the Professional Responsibility Program and despite the passage of almost a year since she misappropriated Complainant's retainer. Indifference to making restitution is also an aggravating factor set forth in the ABA Standards at § 9.22(j).

Although Respondent has not come forward to present any mitigating factors, the following are possible mitigating factors; First, Respondent has no prior disciplinary sanctions on her record. Second, Respondent apparently alluded to some personal difficulties she was experiencing at the time in question. In particular, she apparently stated to Complainant that she was upset in June about the suicide of one of her other clients and she apparently had some financial problems at that time. However, because Respondent failed to provide her version of these events, the Hearing Panel does not have direct information concerning these possible difficulties and declines to speculate as to their relevance.

A balancing of the aggravating factors and the mitigating factors leaves the aggravating factors in preponderance and does not lessen the appropriateness of imposing a significant suspension.

### Conclusion

The facts of this case demonstrated a complete lack of professionalism on the part of Respondent Kjaere Andrews. Respondent violated Rule 1.5(b) by charging an hourly rate twice as high as the rate communicated to the client. She violated Rule 1.15(a) by commingling Complainant's funds with Respondent's own funds. She violated Rule 1.15A by failing to have a trust account. She violated Rule 1.16(d) by failing to refund in hill the advance payment of fee that had not been earned at the time the representation was terminated. Finally, she added insult to injury by blaming Ms. Jenne for terminating the representation "early" when it was Respondent's own actions that led to the termination of Respondent's services.

This course of conduct on the part of Respondent Kjaere Andrews, for which she has not taken responsibility, supports Disciplinary Counsel's suggestion of at least a six month suspension. The Hearing Panel recommends suspension of the Respondent's license to practice law for six months and one day, and directs that Respondent reimburse Complainant the full amount due to Complainant based upon the agreed upon rate of $50.00 per hour.

Panel member James Gallagher concurs with the Sanctions but dissents from the conclusion that Rule 1.5(b) of the Vermont Rules of Professional Conduct was violated under the facts of this case. Notwithstanding Respondent's later claim that she was entitled to $100 an hour, Respondent had communicated to Complainant that Respondent would charge $50 an hour. Mr. Gallagher believes this communication satisfied Rule 1.5(b) by contractually limiting Respondent to this agreed-upon rate.

PROFESSIONAL RESPONSIBILITY BOARD—HEARING PANEL NO. 6