The PEOPLE of the State of Colorado, Complainant,

v.

Joseph Alan COYNE, Attorney–Respondent.

No. 95SA412.

Supreme Court of Colorado, En Banc.

March 4, 1996.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Joseph Alan Coyne, Cripple Creek, Pro Se.

PER CURIAM.

 The respondent in this lawyer discipline proceeding knowingly converted funds held in trust and neglected a legal matter entrusted to him. The respondent did not answer the formal complaint filed by the assistant disciplinary counsel and an order of default was entered. A hearing panel of the supreme court grievance committee approved the hearing board's findings of fact and its recommendation that the respondent be disbarred. We accept the hearing panel's recommendation.

I

The respondent was admitted to practice law in Colorado in 1988. Because the respondent did not answer the complaint, the presiding officer of the hearing board entered an order of default against him on June 20, 1994. C.R.C.P. 241.13(b). The respondent's subsequent motion to file an answer, which the board treated as a motion to set aside the default, was denied effective November 21, 1994, since the respondent did not establish that his failure to answer was the result of mistake, inadvertence, surprise, or excusable neglect. *See id.* The factual allegations in the complaint were therefore deemed admitted. *Id.; People v. Galindo,* 908 P.2d 77, 78 (Colo.1995). Based on the respondent's default, evidence tendered at the hearing, and the failure of the respondent to dispute the facts alleged in the complaint at the hearing, the board found that the allegations and charges of misconduct contained in the two-count complaint, with one exception,[1] were established by clear and convincing evidence.

A

The respondent represented two clients in the sale of their respective parcels of land next to a casino. The clients agreed to finance the sale of their land to the casino, and secured their interests with a deed of trust. The sale involved risks to the clients because the casino intended to raze certain existing buildings on the property which would impair the value of the clients' security interests.

The parties therefore executed a "lenders' agreement" drafted by the respondent that provided that clients would vacate the lot lines under Cripple Creek procedures; the respondent would serve as agent to collect the casino payments for disbursement to his clients; and that, if the casino defaulted, the respondent would take legal action on the clients' behalf, including initiation of foreclosure and partition actions. Pursuant to this agreement, the casino paid the respondent $6,500, which he deposited in his attorney trust account. Of that amount, $650 represented payment to the respondent for his time as the disbursing agent of his clients. The remaining $5,850 was to be used by the respondent should the casino default and his clients were forced to take legal action. If the casino did not default, however, the respondent was obligated to return the $5,850, together with accrued interest, to the casino.

Instead, the respondent used the funds to personally invest in a real estate development firm. He did not notify his clients or the casino that he used the money for a personal investment. Because he was late in disbursing casino payments from August to December 1992, the clients and the casino agreed that the latter would make payments directly to the clients.

A casino employee therefore wrote to the respondent in December 1992 asking him to return the $650 and to confirm that the balance of the $6,500 was in the respondent's trust account. The respondent did not reply to the letter. When he met the employee in January 1993, however, the respondent stated that he would refund the $650 and he misrepresented that the $5,850 was in an interest-bearing trust account. Because the respondent had not returned the $650 by May 1993, the casino asked him to transfer the balance to an independent escrow agent. Although he agreed that he would do it, the respondent never transferred the $5,850. When he spoke to the lawyer for the individual with a controlling interest in the casino about transferring the money, the respondent did not indicate that he had already spent the money, but he asked for a week to return it, which the lawyer refused. A request for investigation was filed on June 21, 1993. In October 1993, the respondent delivered $6,500 to his own lawyer which he said he obtained from a relative. The $6,500 has subsequently been given to the lawyer for one of the respondent's former clients as restitution.

The hearing board concluded that the respondent had knowingly misappropriated $5,850 that was to be held by him in escrow under the "lenders' agreement." The respondent's conduct, which occurred both before and after the effective date of the Rules of Professional Conduct, January 1, 1993, violated DR 1–102(A)(4) and R.P.C. 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 9–102(A) (all funds of clients paid to the lawyer shall be deposited in one or more identifiable interest-bearing depository accounts maintained in the state in which the law office is located); R.P.C. 1.15(a) (a lawyer shall hold property of clients or third persons that is in a lawyer's possession separate from the lawyer's own property); and R.P.C. 8.4(b) (commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer).

### B

In a second matter, the respondent neglected a legal matter entrusted to him, failed to communicate with his client about the matter, and failed to either return the client's $350 retainer or account for the money in a timely manner when he was asked for its return. The foregoing conduct violated DR 6–101(A)(3) and R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer); R.P.C. 1.4(a) (failure to communicate with a client); R.P.C. 1.15(b) (failure to promptly deliver client funds upon request or render a full accounting regarding such funds).

### II

The hearing panel approved the board's recommendation that the respondent be disbarred. Neither the respondent nor the assistant disciplinary counsel has excepted to the panel's recommendation. The respondent's misappropriation was a knowing conversion, and disbarment is the presumed sanction, barring significant factors in mitigation. *People v. Young,* 864 P.2d 563, 564 (Colo.1993). In the absence of such mitigating factors, the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client." ABA *Standards* 4.11.

Factors in aggravation include a dishonest or selfish motive, *id.* at 9.22(b); and a pattern of misconduct, *id.* at 9.22(c). Although in default, the respondent appeared at the hearing, and the board found the following factors in mitigation: the absence of a prior disciplinary record, *id.* at 9.32(a); the existence of personal or emotional problems, *id.* at 9.32(c); and the presence of remorse, *id.* at 9.32(l). Moreover, based on the uncontradicted sworn testimony of the respondent, the board found the existence of interim rehabilitation. *See* ABA *Standards* 9.32(j) (1991).

These mitigating factors, the most significant being the absence of a prior disciplinary record, are insufficient to call for a sanction less than disbarment. *People v. Varallo,* 913 P.2d 1 (Colo.1996). Accordingly, we accept the hearing panel's recommendation.

## III

It is hereby ordered that Joseph Alan Coyne be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after the date on this opinion. It is further ordered that the respondent pay the costs of this proceeding in the amount of $297.36 within thirty days of the date of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Dominion Plaza, Denver, Colorado 80202.