**The PEOPLE of the State Of Colorado, Complainant.**

v.

**Mark O. TIDWELL, Respondent.**

**No. 00PDJ094.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

June 25, 2001.

Amended Opinion by Presiding
Disciplinary Judge ROGER L. KEITHLEY
and Hearing Board members, DEENA
RAFFE, Ph.D, a member of the public, and
JERRY W. RAISCH, a member of the bar.

## AMENDED REPORT, DECISION AND IMPOSITION OF SANCTION

*SANCTION IMPOSED:* ATTORNEY DISBARRED

A sanctions hearing pursuant to C.R.C.P. 251.15(b) was held on May 8, 2001, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Deena Raffe, Ph.D, a member of the public and Jerry W. Raisch, a member of the bar. Gregory G. Sapakoff, Assistant Attorney Regulation Counsel, represented the People of the State of Colorado (the "People"). Mark O. Tidwell ("Tidwell"), the respondent, appeared on his own behalf.

The Complaint in this action was filed December 18, 2000. Tidwell did not file an Answer to the Complaint. On February 1, 2001 the People filed a Motion for Default. Tidwell did not respond. On February 22, 2001, the PDJ issued an Order granting default, stating that all factual allegations set forth in the Complaint were deemed admitted and that all violations of The Rules of Professional Conduct ("Colo.RPC") alleged in the Complaint were also deemed established, *see e.g., People v. Richards,* 748 P.2d 341 (Colo.1987).

At the sanctions hearing, the People presented no additional testimonial evidence. Tidwell testified on his own behalf. Exhibit 1 was offered by the People and admitted into evidence.

The PDJ and Hearing Board considered the People's argument, Tidwell's testimony in mitigation, the facts established by the entry of default, the exhibit admitted, and made the following findings of fact which were established by clear and convincing evidence.

### I. FINDINGS OF FACT

Tidwell has taken and subscribed to the oath of admission, was admitted to the bar of the Supreme Court on October 17, 1980 and is registered upon the official records of this court, registration number 10724. Tidwell is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

All factual allegations set forth in the Complaint were deemed admitted by the entry of

default, and have therefore been established by clear and convincing evidence. *See* Complaint attached hereto as attachment 1. The Order entering default also granted default as to all alleged violations of The Rules of Professional Conduct set forth in the individual claims.

## II. CONCLUSIONS OF LAW

■ The Complaint in this disciplinary case asserts nine claims against Tidwell involving three different clients. The first three claims arise from Tidwell's representation of Frances Merner in post-decree proceedings following a dissolution of marriage. Although Tidwell initially performed the services he agreed to undertake on Merner's behalf, an additional dispute arose, Tidwell agreed to take specific actions on his client's behalf and failed to do so. Notwithstanding Merner's repeated efforts to discuss the progress of the case with Tidwell, he failed to return her phone calls for several months.

In addition, Merner asked Tidwell to represent her in a separate county court civil matter in which she had been named a defendant on a corporate obligation of her business, L & F Merner, Inc. Tidwell had previously represented the corporation and, at the time of the suit, served as corporate secretary. Tidwell agreed to undertake that additional representation, but subsequently took no action on Merner's behalf, failed to appear in court, allowed a default judgment to be entered against Merner and failed to inform her of the court's judgment. On August 24, 1999, Merner forwarded correspondence to Tidwell terminating his services and requesting that he make the files in her cases available for new counsel. Tidwell took no action. He neither withdrew in the pending post-decree matters nor returned Merner's files or otherwise communicated with Merner.

Tidwell's misconduct violated Colo. RPC 1.3(a lawyer shall not neglect a legal matter entrusted to the lawyer), Colo. RPC 1.4(a)(a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information from a client) and Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reason-ably practicable to protect the client's interests, such as surrendering papers and property to which the client is entitled).

■ Claims four, five and six arise out of Tidwell's representation of Claudette Gray in an uncontested divorce. Lorraine Montoya, Gray's mother, retained Tidwell in August 1998 and paid him $500.00 in advance to represent her daughter. The fee was to cover the entire representation unless a dispute regarding custody arose. Thereafter, Tidwell was informed to delay further action on the divorce until July 1999 at which time he was instructed to proceed. Tidwell forwarded paperwork to Gray's husband concerning financial matters. The husband completed the forms and returned them to Tidwell. From September 1999 to August 2000, Tidwell took no further action on Gray's divorce. On August 9, 2000, Gray sent a letter to Tidwell terminating his representation and demanding a refund of the advance payment made on her behalf. At the time the demand was made, Tidwell had not earned the entire $500 fee received on Gray's behalf. Tidwell did not return any portion of the advance fee.

■ Although Tidwell testified at the sanctions hearing that he had expended at least six hours of his time and $120 of the funds in connection with the representation, the findings of fact admitted by the entry of default established that the $500 fee was the full fee for completion of the divorce proceeding absent a custody dispute and requires the PDJ and Hearing Board to conclude that some portion of the $500 advance fee was unearned following his termination. Tidwell, however, credibly testified that he understood the $500 fee to be a retainer against which hourly billings were to be deducted. The findings of fact, in light of Tidwell's expressed understanding of the fee agreement, do not support a conclusion that Tidwell knew, following termination, that some portion of the $500 remained unearned and still belonged to the client. The state of mind of the attorney is a crucial factor in determining whether the conversion is knowing or technical. *People v. Varallo*, 913 P.2d 1, 11(Colo.1996). Tidwell's conversion must

be considered technical or negligent, and constitutes a violation of Colo. RPC 8.4(c).

 Tidwell's failure to promptly proceed with the Gray divorce once authorized to do so constituted neglect and violated Colo. RPC 1.3(a lawyer shall not neglect a legal matter entrusted to the lawyer). Tidwell's failure to promptly refund the unearned portion of the $500 advance fee, even though negligent, violated Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interests, such as surrendering papers and property to which the client is entitled).

 Claims seven, eight, and nine arise from Tidwell's representation of Renee St. Peter in a personal bankruptcy matter. In September 1999, St. Peter hired Tidwell to file a personal bankruptcy for her, provided the requisite documentation to him and paid him $550 to cover the bankruptcy filing and to pay the necessary costs. Tidwell recommended that the bankruptcy filing be delayed until after St. Peter had received her 1999 tax refund and St. Peter agreed. By April 2000, she had received her tax refund and there was no further reason to delay the bankruptcy filing. However, as late as early June 2000, Tidwell had not yet made the filing. On June 6, 2000, St. Peter sent a letter to Tidwell complaining about the delay and demanding a refund of her $550. Tidwell did not respond to St. Peter's correspondence. Thereafter, Tidwell did not file the bankruptcy case nor communicate with St. Peter. Tidwell moved his office to a new location and did not inform St. Peter. On September 8, 2000, St. Peter hand delivered a letter to Tidwell terminating his services and demanding a refund of the $550. As of the date of termination, Tidwell had not earned any portion of the $550 fee. Tidwell failed to promptly refund any portion of the $550 fee.[1]

 As in the Merner and Gray cases, Tidwell's misconduct in the St. Peter matter violated Colo. RPC 1.3(a lawyer shall not

neglect a legal matter entrusted to the lawyer) and Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interests, such as surrendering papers and property to which the client is entitled). Tidwell's failure to promptly refund the $550 fee in the St. Peter matter is, however, much more serious. From September 1999, through the time of the filing of the Complaint in this action, Tidwell knew that he held $550 of St. Peter's money, knew that he had not earned those funds and, notwithstanding that knowledge, when he was discharged by St. Peter, did not promptly refund the unearned fees. In *People v. Varallo*, 913 P.2d 1, 11 (Colo. 1996), the Colorado Supreme Court clearly defined the difference between knowing conversion and "technical" or negligent conversion:

> Knowing misappropriation [for which the lawyer is almost invariably disbarred] "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking." *In re Noonan*, 102 N.J. 157, 160, 506 A.2d 722 (1986). Misappropriation includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979). The motive of the lawyer is irrelevant in determining the appropriate discipline for knowing misappropriation.

> Moreover, "[i]ntent to deprive permanently a client of misappropriated funds, however, is not an element of knowing misappropriation." *In re Barlow*, 140 N.J. 191, 657 A.2d 1197, 1201 (1995).

> A "technical conversion," usually warranting suspension rather than disbarment, is a conversion or misappropriation where the complainant either concedes that the misappropriation was negligent, *People v. Dickinson*, 903 P.2d 1132, 1138 (Colo.1995), or it cannot be proven by clear and con-

1. In both the Gray matter and the St. Peter matter, Tidwell did eventually refund the full amount of the advance fees. He did so, however,

only after the Complaint in this case had been filed.

vincing evidence that the respondent knowingly converted the funds.

Tidwell exercised dominion and control over St. Peter's money for at least five months after he had been terminated with full knowledge that he had not earned those funds and that he was obligated to refund the money to his former client. Such conduct requires a conclusion that he engaged in the knowing conversion of St. Peter's funds. Tidwell's knowing conversion of his client's finds was dishonest and violated Colo. RPC 8.4(c)(conduct involving dishonesty, fraud, deceit or misrepresentation).

### III. SANCTION/IMPOSITION OF DISCIPLINE

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.11 provides "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

ABA *Standard* 4.41(b) and (c), and 4.42(a) and (b) provide:

4.41. Disbarment is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

Tidwell's knowing conversion of St. Peter's money falls squarely under ABA *Standard* 4.11. Neither Tidwell's pattern of neglect nor the individual instances of neglect found in all three cases caused injury to the clients of such a degree to find that the injury sustained to be serious as envisioned by ABA *Standards* 4.41(b) or (c).

Under the ABA *Standards,* the presumptive discipline for Tidwell's knowing conversion is disbarment and the presumptive discipline for neglect and failure to communicate with his clients is suspension.

An examination of Colorado law supports the similar presumptive sanctions of disbarment for knowing conversion of client funds and suspension or disbarment for serious neglect of client matters. *See People v. Elliott,* 99PDJ059, slip op. at 8 (consolidated with 99PDJ086) (Colo. PDJ March 1, 2000), 29 Colo. Law. 112, 114 (May 2000)(disbarring attorney for his accepting advance fees from two clients, performing some but not all of the services for which he was paid, retaining the fees for one year in one matter and two years in another matter, and abandoning the clients, *citing People v. Singer,* 897 P.2d 798, 801 (Colo.1995)(holding that extensive and prolonged neglect is considered willful misconduct)); *People v. Reynolds,* 933 P.2d 1295, 1305 (Colo.1997) (respondent attorney suspended for three years and thirty days for, among other rule violations, repeatedly neglecting numerous client matters, and engaging in dishonesty, misusing client funds); *People v. Coyne,* 913 P.2d 12, 14 (Colo.1996)(disbarring lawyer who, in one matter, misappropriated client funds for his own use and neglected a legal matter); *People v. Young,* 864 P.2d 563, 564 (Colo.1993)(holding that disbarment is the presumed sanction for knowing conversion barring significant factors in mitigation); *In re Righter,* 992 P.2d 1147, 1148 (Colo.1999)(suspending attorney for three years for neglecting client's case, failing to communicate, and engaging in misrepresentations).

The PDJ and Hearing Board considered aggravating and mitigating factors pursuant to ABA *Standards* 9.22 and 9.32 respectively. The People's evidence in aggravation demonstrated that Tidwell had a prior disciplinary offense (a letter of admonition in 1995 for neglect), *see id.* at 9.22(a); he had a dishonest or selfish motive, *see id.*

at 9.22(b); he demonstrated a pattern of misconduct; *see id.* at 9.22(c); he engaged in multiple offenses, *see id.* at 9.22(d); and had substantial experience in the practice of law, *see id.* at 9.22(i). and. In mitigation, Tidwell stated and exhibited genuine remorse, *id.* at 9.32(i). Although Tidwell testified that he suffered from and took medication for depression[2], no evidence was presented from which it can be concluded that his depression caused the misconduct, that he has either recovered from the depression or that the depression has been arrested, or that there has been a sustained period of recovery. *See id.* at 9.32(i). Absent such proof, a mental disability may not be considered as a mitigating factor in attorney disciplinary proceedings.

In addition, Tidwell testified and the People confirmed that Tidwell refunded the advance fees to both Gray and St. Peter *after* the Complaint was filed in this action. ABA *Standard* 9.4(a) provides that forced or compelled restitution should not be considered as either aggravating or mitigating in arriving at the appropriate sanction. Tidwell's refund to Gray and St. Peter was not "forced" or "compelled." Although there was certainly some incentive to do so as a result of the disciplinary investigation and subsequent prosecution, those events alone did not force or compel Tidwell to refund the advance fees. That he failed to refund the advance fees until after the Complaint was filed in this case, does not deprive Tidwell of the mitigation attendant in his efforts to make restitution; rather, it bears upon the weight to be accorded for the act. Tidwell's delayed rectification of his misconduct does provide some measure of mitigation, though limited. *See id. at* 9.32(d).

### IV. ORDER

It is therefore ORDERED:

1. MARK OWEN TIDWELL, registration number 10724, is DISBARRED from the practice of law effective thirty-one days from the date of this Order, and his name shall be stricken from the roll of attorneys licensed to practice law in this state;

2. TIDWELL is ORDERED to pay the costs of these proceedings.

3. The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

### EXHIBIT 1

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

3. JURISDICTION

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on October 17, 1980, and is registered upon the official records of this court, registration No. 10724. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's current registered business address is 1645 Court Place, Suite 319, Denver, Colorado 80202.

4. **Merner Matter**

5. CLAIM I
 **[Neglect of a Legal Matter—
 Colo. RPC 1.3]**

2. In approximately June 1997, Frances Merner, a complaining witness in this matter, retained the respondent to represent her in post-dissolution disputes with her former husband.

3. Initially, the respondent represented Ms. Merner with respect to a contempt citation issued to Ms. Merner. The respondent was successful in negotiating a resolution of the contempt issues and the parties reached a stipulation concerning child support payable by Ms. Merner and marital debts payable by her former spouse.

4. By late 1998, however, Ms. Merner's former spouse was not complying with his

---

2. ABA *Standards* 9.32(i) (Supp.1992) requires "medical" evidence to establish the mental disability. Construing, without deciding, that Tidwell's testimony concerning his health qualifies as "medical" evidence, his testimony is insufficient to support this mitigating factor.

obligations under the stipulation reached by the parties.

5. Ms. Merner met with the respondent and requested that he file a motion for a contempt citation against her former spouse.

6. In approximately February 1999, Ms. Merner met with the respondent at his office and provided to him all of the documents she had to demonstrate her former spouse's failure to comply with his obligation to pay specified marital debts.

7. Over the next several months, Ms. Merner attempted to contact the respondent frequently by telephone to find out the status of the motion to compel.

8. The respondent generally failed to return Ms. Merner's telephone calls, and he did not provide Ms. Merner with any information concerning the status of the motion to compel.

9. In April 1999, Ms. Merner received a letter from a collection agency concerning a debt owed by L & F Merner, Inc., a corporation in which Ms. Merner formerly had an ownership interest. The demand letter was sent to Ms. Merner because she had personally guaranteed L & F Merner's obligation to Transmedia Restaurant Company, Inc. ("Transmedia").

10. The respondent had previously represented L & F Merner and, at the time Ms. Merner received the collection letter, was the corporate secretary for L & F Merner.

11. Ms. Merner referred the collection agency to the respondent, but the collection agency was unable to get the respondent to return their telephone calls.

12. In late April 1999, Ms. Merner called the respondent's office and left a message for him asking him to contact the collection agency and deal with the collection agency concerning L & F Merner's debt.

13. On or about May 5, 1999, Ms. Merner sent a letter to the respondent urging him to serve the contempt papers on her former spouse immediately. She also urged the respondent to contact the collection agency for Transmedia and inform them the debt they were seeking to collect was a corporate obligation of L & F Merner.

14. In June 1999, Ms. Merner was served with a Denver County Court Summons and Complaint in an action brought by Transmedia against L & F Merner and Ms. Merner personally. The summons required an answer or other appearance on July 6, 1999.

15. After she received the Summons and Complaint in the Denver County Court matter, Ms. Merner spoke to the respondent by telephone concerning the Transmedia matter.

16. The respondent assured Ms. Merner that the Transmedia debt was a corporate obligation and would be resolved.

17. During the conversation with the respondent, Ms. Merner informed the respondent that she was moving out of state and would not be in Colorado for the July 6th court date.

18. The respondent assured Ms. Merner that he would resolve the Transmedia matter or appear on her behalf on or before the July 6th return date.

19. The respondent failed to appear on behalf of Ms. Merner or L & F Merner in the Transmedia case on July 6, 1999.

20. A default judgment was entered in favor of Transmedia and against L & F Merner and Ms. Merner in the amount of $2,271.08.

21. Throughout the rest of July 1999, Ms. Merner did not receive any further information from the respondent concerning either the Transmedia matter or the domestic relations matters concerning her former spouse.

22. In late July 1999, Ms. Merner contacted the Denver County Court and learned, for the first time, that a default judgment had been entered against her.

23. In August 1999, Ms. Merner left several voice mail messages at the respondent's office, seeking information concerning both the Transmedia matter and the status of contempt proceedings against her former spouse.

24. On some occasions, the respondent's phone service was disconnected and Ms. Merner was unable to leave any message.

25. The respondent did not return any of the telephone messages left by Ms. Merner in August 1999.

26. On or about August 24, 1999, Ms. Merner sent a letter to the respondent outlining her concerns, terminating the respondent's representation and requesting that he make her file available for new counsel.

27. The respondent never filed contempt proceedings against Ms. Merner's former spouse as she requested and he never withdrew from representation of Ms. Merner in the domestic relations matter.

28. The respondent did not communicate with Ms. Merner in any form after July 1999.

29. Ms. Merner entrusted to the respondent legal matters regarding her domestic relations case and the Transmedia collection litigation.

30. Through his conduct as described above, the respondent neglected these legal matters entrusted to him.

31. The respondent violated Colo. RPC 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM II

**[Failure to keep a client reasonably informed of the status of a matter and to comply with reasonable requests for information—Colo. RPC 1.4(a) ]**

32. Paragraphs 2 through 31 are incorporated herein.

33. In representing Ms. Merner as alleged above, the respondent had a duty to keep Ms. Merner reasonably informed about the status of her legal matters and to comply with reasonable requests for information.

34. The respondent failed to comply with these duties through his conduct as described above, when Ms. Merner had a reasonable expectation that the respondent would communicate with her concerning the status of her legal matters.

35. Through his conduct as described above, the respondent violated Colo. RPC 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information from a client).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM III

**[Failure, upon termination of representation, to take steps to the extent reasonably practicable to protect the client's interest—Colo. RPC 1.16(d) ]**

36. Paragraphs 2 through 35 are incorporated herein.

37. Through her letter dated August 24, 1999, Ms. Merner terminated the respondent's representation of her.

38. Upon termination of his representation, the respondent had a duty to take steps to the extent reasonably practicable to protect Ms. Merner's interests, such as surrendering papers and property to which Ms. Merner was entitled.

39. In terminating the respondent's representation, Ms. Merner requested that the respondent return her file and make it available for new counsel.

40. The respondent has failed or refused to return Ms. Merner's file to her.

41. Through his conduct as described above, the respondent violated Colo. RPC 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interests, such as surrendering papers and property to which the client is entitled).

WHEREFORE, the complainant prays at the conclusion hereof.

### 6. Montoya Matter
### CLAIM IV

**[Neglect of a legal matter— Colo. RPC 1.3]**

42. On or about August 25, 1998, Lorraine Montoya, a complaining witness in this matter, paid the respondent $500.00 in ad-

vance to represent her daughter, Claudette Rachel Gray, in an uncontested divorce.

43. The advance fee was to cover the entire representation unless there was a dispute concerning custody.

44. Shortly after the respondent was retained, Ms. Gray and her husband considered reconciliation, and Ms. Gray instructed the respondent to put the matter on hold temporarily.

45. In July 1999, Ms. Gray communicated to the respondent her desire to proceed with the dissolution.

46. The respondent provided paperwork to Ms. Gray's husband to complete concerning financial matters. Ms. Gray's husband filled out the paperwork and returned it to the respondent in September 1999.

47. Since September 1999, the respondent has failed to take any further action on Ms. Gray's dissolution matter and he has never filed a Petition for Dissolution of Marriage.

48. Through his conduct as described above, the respondent neglected Ms. Gray's dissolution case.

49. The respondent violated Colo. RPC 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM V

**[Failure, upon termination of representation to refund unearned fee—Colo. RPC 1.16(d) ]**

50. Paragraphs 42 through 49 are incorporated herein.

51. On or about August 9, 2000, Ms. Gray sent a letter to the respondent terminating his representation and demanding a refund of the advance payment made to the respondent on her behalf.

52. Upon termination of his representation, the respondent had a duty to refund any advance payment of fee that had not been earned.

53. The respondent did not earn the $500.00 fee paid to him in advance to represent Ms. Gray.

54. The respondent has failed to refund any of the money paid to him in advance to represent Ms. Gray.

55. Through his conduct as described above, the respondent violated Colo. RPC 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interests, such as refunding any advance payment of fee that has not been earned).

WHEREFORE, the complainant prays at the conclusion hereof.

### CLAIM VI

**[Conversion—Colo. RPC 8.4(c) ]**

56. Paragraphs 42 through 55 are incorporated herein.

57. The respondent has continued to exercise dominion and control over funds belonging to Ms. Montoya or Ms. Gray since Ms. Gray terminated his representation, despite Ms. Gray's request for the refund.

58. The respondent has neither authority nor justification for continuing to exercise dominion or control over these funds.

59. Through his conduct as described above, the respondent has converted funds belonging to a client or third person.

60. Through his conversion of funds, the respondent violated Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

WHEREFORE, the complainant prays at the conclusion hereof.

7. **St. Peter Matter**

### CLAIM VII

**[Neglect of a legal matter— Colo. RPC 1.3]**

61. In approximately September 1999, Renee St. Peter, a complaining witness in this matter, paid the respondent $550.00 in advance for attorney fees and costs necessary to file a personal bankruptcy.

62. Ms. St. Peter provided the respondent with the information necessary to file her bankruptcy.

63. At the respondent's suggestion, Ms. St. Peter agreed to wait to file the bankruptcy while she made sure that any of her husband's money was removed from their joint checking account.

64. Ms. St. Peter also agreed, based upon the respondent's advice, to wait until after she received her federal income tax refund for 1999 to file her bankruptcy.

65. By April 2000, all of Ms. St. Peter's husband's funds were out of the checking account and she had received her tax refund.

66. By April 2000, there was no reason for further delay in filing Ms. St. Peter's bankruptcy.

67. In June 2000, the respondent had still not filed Ms. St. Peter's bankruptcy.

68. On June 6, 2000, Ms. St. Peter sent a letter to the respondent complaining about his lack of action and demanding that he file her bankruptcy within 10 working days or she would contact "the bar association."

69. The respondent never filed Ms. St. Peter's bankruptcy and failed to communicate with her further concerning her bankruptcy matter.

70. The respondent also moved to a new office location without providing any notice to Ms. St. Peter.

71. Through his conduct as described above, the respondent neglected Ms. St. Peter's bankruptcy matter.

72. The respondent violated Colo. RPC 1.3 (a lawyer shall not neglect a legal matter entrusted to the lawyer).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM VIII

### [Failure upon termination of representation to refund unearned fees— Colo. RPC 1.16(d) ]

73. Paragraphs 61 through 72 are incorporated herein.

74. On or about September 8, 2000, Ms. St. Peter hand-delivered a letter to the respondent's new office advising the respondent that his representation was terminated and demanding a refund.

75. Upon termination of his representation, the respondent had a duty to take steps to the extent reasonably practicable to protect Ms. St. Peter's interests, including refunding any advance payment of fee that had not been earned.

76. As of the date his representation was terminated, the respondent had not earned any of the fee paid to him by Ms. St. Peter.

77. The respondent has failed or refused to refund to Ms. St. Peter any of the money she paid to him in advance for filing her bankruptcy, including payment made to him for the cost of filing the bankruptcy petition.

78. Through his conduct as described above, the respondent violated Colo. RPC 1.16(d) (upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect the client's interests such as refunding any advance payment of fee that has not been earned).

WHEREFORE, the complainant prays at the conclusion hereof.

## CLAIM IX

### [Conversion—Colo. RPC 8.4(c) ]

79. Paragraphs 61 through 78 are incorporated herein.

80. The respondent has continued to exercise dominion and control over funds belonging to Ms. St. Peter since she terminated the respondent's representation, despite Ms. St. Peter's request for the refund.

81. The respondent has neither authority nor justification for continuing to exercise dominion or control over these funds.

82. Through his conduct as described above, the respondent has converted funds belonging to a client.

83. Through his conversion of funds, the respondent violated Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation).

WHEREFORE, it is prayed that the respondent be found guilty of violations of various rules of conduct which establish grounds for discipline as provided in C.R.C.P. 251.5, and the Colorado Rules of Professional Conduct, rules 1.3, 1.4(a), 1.16(d) and 8.4(c), and that he be appropriately disciplined and assessed the costs of these proceedings.