WILLIAM R. LUCERO, PRESIDING DISCIPLINARY JUDGE
In six client matters, Shannon Charles Holcomb ("Respondent") engaged in unethical conduct, ranging from lack of communication *741 and diligence to failure to protect his clients' interests on termination to failing to obey court orders. Most critically, Respondent abandoned two clients and converted unearned fees of three clients. This pattern of misconduct warrants disbarment.
I. PROCEDURAL HISTORY
Under C.R.C.P. 251.8, Respondent was immediately suspended by the Colorado Supreme Court on June 13, 2017.
On July 21, 2017, Alan C. Obye, Office of Attorney Regulation Counsel ("the People"), filed a complaint with the Presiding Disciplinary Judge ("the Court"). The same day, the People sent copies of the complaint to Respondent via certified and regular mail at his registered business and home addresses, as well as three other known addresses.
On September 8, 2017, the People moved for additional time to file a motion for default in order to allow Respondent more time to answer. The Court granted that motion. Nevertheless, Respondent failed to answer, and the Court granted the People's motion for default on October 31, 2017. In the default order, the Court noted that Respondent had contacted the Court by telephone around October 10, 2017, and was informed that he could file a handwritten response to the default motion. Upon the entry of default, the Court deemed all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]
A sanctions hearing was set for January 29, 2018, but it was later rescheduled for April 20, 2018, at the parties' request. Both the Court and the People sent confirmation of the sanctions hearing to the same addresses mentioned above, along with a newly discovered address. The People filed a hearing brief on April 13, 2018; Respondent did not submit briefing.
On the morning of the sanctions hearing, April 20, 2018, Respondent filed a motion to set aside entry of default, and the People responded a few hours later. That afternoon, the Court held a sanctions hearing under C.R.C.P. 251.15(b). Obye represented the People, and Respondent appeared pro se.
The Court asked the parties to argue Respondent's motion at the sanctions hearing. Respondent explained that in mid-2017, he received in close succession several citations for driving while impaired. He was sentenced to work release between August 15, 2017, and March 9, 2018, during which time, he said, he did not have use of a computer or printer and could not access his client files. Under those circumstances, he argued, the Court could reasonably find excusable neglect. The People disagreed, noting that Respondent could have submitted (but did not submit) a handwritten answer or a handwritten response to the motion for default, as he was invited to do by the Court. The Court concluded that no valid basis existed to grant Respondent's request to vacate entry of default.
Respondent then orally moved for a continuance in order to better prepare for the hearing, but the PDJ denied that request as well, observing that Respondent had been out of work release for more than a month and therefore already had been afforded ample opportunity to prepare for the hearing.
At the sanctions hearing, the People's exhibits 1-2 were admitted into evidence, and the Court heard testimony from Respondent.
II. ESTABLISHED FACTS AND RULE VIOLATIONS
Respondent took the oath of admission and was admitted to practice law in Colorado on October 21, 1997, under attorney registration number 28675. He is thus subject to the Court's jurisdiction in this disciplinary proceeding.[2]
Fields Matter
On October 18, 2015, Lisa Fields paid Respondent a $3,500.00 retainer for legal representation in a post-dissolution matter in Larimer County District Court. Respondent was hired to help Fields modify parenting time and child support. Fields signed a retainer *742 agreement. Respondent told Fields he would provide her a copy of the retainer agreement, but he never did.
Respondent sent Fields a draft motion to modify parenting time and a draft motion to modify child support on November 5, 2015. Fields notarized and returned the motions the next day. Respondent then filed the motions on November 9, 2015. On December 3, 2015, Fields requested that Respondent provide an update and an accounting of her retainer. He agreed, but did not do so.
The court issued a case management order on December 8, 2015, which required the parties to attend mediation within thirty days. Neither party provided proof of mediation or a notice to set, however, so the court dismissed the pending motions without prejudice. Fields left a voicemail for Respondent on January 15, 2016, requesting an update and an accounting. Respondent did not respond. He did, however, refile the motion to modify parenting time and child support on February 16, 2016.
Between February 11 and September 7, 2016, Fields repeatedly attempted to contact Respondent for an update on her case and the status of her retainer. Respondent rarely responded to Fields's attempts to contact him, and he never provided an update or accounting.
On March 10, 2016, the parties attended mediation; the mediator filed a status report on the same day. On April 18, 2016, the court sua sponte issued an order noting that no action had been taken and warning that all pending motions would be dismissed if no new action were taken within ten days. The case appears to have been closed on April 29, 2016, but reopened on May 20, 2016, when Respondent filed a notice to set.
The parties filed a stipulation as to parenting time issues on May 27, 2016, which the court approved a few days later. A hearing was set for July 6, 2016. On June 21, 2016, the court sua sponte dismissed the motion to modify child support because Respondent failed to file financial disclosures, even though Fields had provided him the financial documentation for the disclosures. Fields learned from the opposing party that the case had been dismissed on June 22, 2016.
On July 8, 2016, Fields moved pro se to reopen the motion to modify. She stated that she had been unable to reach Respondent despite her numerous efforts, and that he had failed to file the proper financial disclosures. She also filed a pro se motion to remove Respondent from her case. The court granted both motions.
On September 7, 2016, Fields spoke with Respondent on the phone and requested an accounting. Fields maintained that Respondent should refund a majority of her retainer, considering the lack of work he completed. Respondent agreed and stated that he could return Fields's funds after selling items from his father's estate, but as of July 2017, Fields had received neither an accounting nor a refund from Respondent.
Through this misconduct, Respondent violated Colo. RPC 1.3, which provides that a lawyer must act with reasonable promptness and diligence when representing a client; Colo. RPC 1.4(a)(3), which provides that a lawyer must keep a client reasonably informed about the status of the client's matter; Colo. RPC 1.4(a)(4), which provides that a lawyer must promptly comply with reasonable requests for information; Colo. RPC 1.16(d), which provides that a lawyer must take steps upon termination to protect a client's interests, including giving reasonable notice to the client and providing a refund of unearned fees; and Colo. RPC 8.4(c), which provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
Fletcher Matter
Brent Fletcher retained Respondent in February 2016 in a child support and parenting time matter. Fletcher signed a fee agreement-though he was never given a copy-and he paid Respondent $3,500.00. Respondent entered his appearance on February 24, 2016. He filed motions to modify parenting time and child support about a month later. Respondent also accompanied Fletcher to mediation on June 3, 2016.
*743 About two months into the representation, Fletcher began to have difficulty communicating with Respondent. On May 4, 2016, Fletcher emailed Respondent to express concern about the lack of communication. Respondent did not respond for another thirteen days, when he asked Fletcher for financial documents. On June 17, 2016, Fletcher texted Respondent, requesting an accounting. Respondent replied, agreeing to provide an accounting, but he never did so. On July 2, 2017, Fletcher repeated his request; Respondent did not respond.
On July 5, 2016, Fletcher fired Respondent by text. Fletcher also requested a copy of his fee agreement and an accounting. On July 13, 2016, Respondent texted and emailed Fletcher, stating that he was in New Mexico dealing with his father's estate. Fletcher answered that he wanted an itemized receipt.
Over the following months, Fletcher continued to text Respondent, reiterating his request for an itemized receipt and a copy of the fee agreement. On September 8, 2016, Respondent texted that he was "mailing it right now," but Fletcher never received anything from him. About three weeks later, Fletcher received another text from Respondent: "Hi Brent. Sorry for my behavior. Working on getting your money back to you. Please accept my apology." Fletcher texted again on October 3 and 9, repeating his request for a full refund. He continued to text throughout October 2016. Respondent replied on October 28, 2016, stating that the mail he sent had been returned as undeliverable. Fletcher then provided his address, but Respondent never sent a refund or an accounting.
On October 12, 2016, Fletcher filed with the court a pro se, handwritten request to remove Respondent from the case and a motion to postpone the next court date. He wrote:
[Respondent] was my attorney and he stopped replying to me a couple months back. I was unaware that I had a court date set for October 25th till this morning. I will need time to review this case, collect information from my previous lawyer and to fully understand [my] rights before representing myself in this case.
The court granted Fletcher's motions, and Fletcher proceeded pro se.
Through this conduct, Respondent violated Colo. RPC 1.4(a)(4) ; Colo. RPC 1.16(d) ; and Colo. RPC 8.4(c).
Magistrate Connors Matter
Respondent represented a petitioner in a domestic relations case. He entered his appearance on January 20, 2016, and filed motions to modify parenting time and child support on May 20, 2016. On August 24, 2016, the court questioned whether the action was being diligently prosecuted because nothing had been filed in response to an earlier court order requiring mediation. On August 30, 2016, counsel for the respondent in the case filed a notice to set in which she stated that she had been unable to contact Respondent to confer.
Respondent failed to appear for a setting conference held on September 23 and a status conference held on October 11, 2016. On October 7, 2016, counsel for the respondent filed a position statement in which she represented that she had been unable to contact Respondent for several months. The court set a hearing for November 7, 2016, but Respondent and his client both failed to appear on that day. The hearing went forward, and the court issued a minute order resolving the outstanding parenting time and child support issues.
On November 14, 2016, Respondent's client filed a pro se motion for attorney withdrawal. Four days later, she filed a pro se motion to set aside the orders, stating that Respondent had not notified her about the November 7 hearing. She stated that she had not had contact with Respondent since early August 2016. The court granted the client's motions in January 2017.
Through this conduct, Respondent violated Colo. RPC 1.3 and Colo. RPC 1.4(a)(3).
Attorney Regulation Committee Matter
Respondent represented the petitioning party in a domestic relations case in Weld County District Court.
*744 On June 20, 2016, Respondent and his client failed to appear for a status conference. At that conference, the opposing counsel reported having difficulty contacting Respondent. The court issued a show cause order the same day, requiring Respondent to appear on July 6, 2016, to explain his failure to file required financial disclosures. But Respondent failed to appear at the show cause hearing. The court issued another show cause order, requiring Respondent to appear on July 19, 2016, and permitting the opposing counsel to move for attorney's fees. Respondent was served with the show cause order electronically via ICCES on July 6, 2016. Respondent again failed to appear at the rescheduled show cause hearing.
The court issued yet another show cause order, requiring Respondent to appear on July 27, 2016. On that date, the court issued an order granting attorney's fees to opposing counsel and sanctioning Respondent by ordering him to pay opposing counsel $2,157.50 within ten days. On August 9, 2016, another attorney entered his appearance on the petitioner's behalf. The case went forward and was closed in March 2017, though it does not appear from the register of actions that Respondent ever withdrew from the case.
Through this conduct, Respondent violated Colo. RPC 3.4(c), which prohibits lawyers from knowingly disobeying an obligation of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
Eppler Matter
On August 18, 2015, Michelle Eppler retained Respondent to represent her, paying him $4,000.00. Eppler terminated Respondent's representation two weeks later and requested a refund of her retainer. Respondent agreed to refund $3,764.00 of Eppler's retainer in exchange for her agreement to release him from malpractice liability and to release him from any complaints she could make to the People. In relevant part, the agreement stated:
WHEREAS, Eppler has threatened to file claims and grievances with [the People];
WHEREAS, Eppler demands a full refund of her payment of legal services to Law Firm;
...
Except as set forth in this Agreement, Eppler, on behalf of herself, her respective successors, heirs, predecessors, and assigns, does hereby forever waive, release and discharge Law Firm, and all of its agents, servants, employees, predecessors, successors, heirs, assigns, and assignors, including without limitation, from any and all grievances, controversies, claims and complaints to [the People] against Law Firm, and any other claims, demands, controversies, actions, causes of action, obligations, liabilities, costs, expenses, attorneys fees, and damages of whatever character, nature and kind, in law or in equity, past present of future, known and unknown, suspected or unsuspected, from the beginning of time to the date herein.
Respondent and Eppler signed a document memorializing this agreement, but Respondent did not advise Eppler to seek independent counsel, nor was Eppler represented by independent counsel in making the agreement.
Through this conduct, Respondent violated Colo. RPC 1.8(h)(1), which provides that a lawyer may not make an agreement prospectively limiting the lawyer's liability to a client for a malpractice action unless the client is independently represented in making the agreement; and Colo. RPC 8.4(d), which provides that it is professional misconduct for a lawyer to engage in conduct prejudicing the administration of justice.
Harshell Matter
On November 29, 2016, Erin Harshell retained Respondent to represent her in a dissolution matter that had already been filed. Respondent told Harshell that he would file a substitution of counsel. Harshell's employer, Mountain View Clinical Research, issued a check to Respondent for $5,000.00 on November 29, 2016. Respondent negotiated the check on December 12, 2016.
Harshell emailed Respondent on November 20 and December 6, 2016, but Respondent never responded. Harshell's employer also emailed Respondent in mid-December *745 2016 but received no response. On December 20, 2016, Harshell again emailed Respondent, stating that she was going to proceed with different counsel due to Respondent's lack of communication. Harshell also requested a refund as soon as possible so that she could retain another lawyer. The next day, Respondent called Harshell; Harshell said she wanted a refund, but Respondent told her that he had done a substantial amount of work on her case. Harshell emailed Respondent twice more requesting a refund and an accounting, but she received no response. Respondent has not provided a refund or an accounting, and to Harshell's knowledge, he has never performed any work on her case. Harshell is obligated to reimburse her employer for the $5,000.00 retainer check.
Through this conduct, Respondent violated Colo. RPC 1.3 ; Colo. RPC 1.4(a)(4) ; Colo. RPC 1.16(d) ; and Colo. RPC 8.4(c).
SANCTIONS
The American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards ")[3] and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[4] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.
ABA Standard 3.0-Duty, Mental State, and Injury
Duty : By neglecting and abandoning client matters entrusted to him, Respondent violated his duties of diligence to his clients. By failing to adequately communicate with clients, Respondent violated his duties of communication and loyalty. By failing to comply with court orders, Respondent violated his professional duties to the legal system. By knowingly converting client funds, Respondent violated his duties of loyalty and honesty to his clients.
Mental State : The order of default establishes that Respondent knowingly converted client funds and knowingly failed to comply with court orders. The Court infers from the established facts that Respondent knowingly violated the remaining claims of the complaint, save for Claim XII in the Eppler matter (establishing a violation of Colo. RPC 1.8(h)(1) ), which the Court finds was done with an intentional state of mind.
Injury : By failing to exercise diligence and failing to communicate, Respondent caused his clients legal harm. His conversion of funds seriously financially injured his clients: Respondent knowingly converted Fields's $3,500.00 retainer, Fletcher's $3,500.00 retainer, and Harshell's $5,000.00 retainer. Further, as Fields explained in a written statement to the Court, Respondent's behavior has not just resulted in financial and legal injury but has also taken an emotional toll, translating into her newfound distrust of lawyers: "It has been very disheartening to know that there are people like [Respondent] that we should be able to trust has our best interest at stake, but do not. I feel taken advantage of, and betrayed."[5]
Respondent also harmed the court system by ignoring court orders in the Attorney Regulation Committee matter, and he eroded public trust in the legal profession by convincing Eppler to sign an agreement releasing him from liability.
ABA Standards 4.0-7.0-Presumptive Sanction
Respondent's knowing conversion is addressed by ABA Standard 4.11, which calls for disbarment when a lawyer knowingly converts client property and causes injury or potential injury to a client. The Court also looks to ABA Standard 4.41, which provides that disbarment is generally appropriate when a lawyer (1) abandons his or her law practice and causes serious or potentially serious injury to a client; (2) knowingly fails *746 to perform services and causes a client serious or potentially serious injury; or (3) engages in a pattern of neglect with respect to client matters, resulting in a client's serious or potentially serious injury. Though other Standards also apply related to Respondent's communication, diligence, and self-dealing misconduct, the claims of conversion and abandonment-for which disbarment is the presumptive sanction-are the gravamen of this case, and the "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[6]
ABA Standard 9.0-Aggravating and Mitigating Factors
Aggravating circumstances include any considerations or factors that may justify an increase in the degree of the presumptive sanction to be imposed, while mitigating circumstances may warrant a reduction in the severity of the sanction.[7] Five aggravating factors are present here: Respondent's prior disciplinary offense,[8] his dishonest and selfish motive, his pattern of misconduct, his multiple offenses, and his indifference to making restitution.[9]
On the other side of the ledger, Respondent's personal and emotional problems serve somewhat to mitigate his conduct.[10] Respondent first presented opening arguments and then testified during the sanctions hearing about the personal and emotional problems he experienced in the past three years. His father, whom he idolized, passed away in autumn 2016; the trauma associated with his father's death, he believes, caused him to break down sometime thereafter.[11] Respondent turned to alcohol, leading to his convictions in late July 2017 for driving while impaired by alcohol. He was sentenced to a work release program, which he entered in August 2017 and exited in March 2018. During his work release, he could not contact his clients, he said. He argued that the People's disciplinary charges stem from that time, though the admitted facts do not support that argument.
The Court recognizes that this series of events likely affected Respondent's practice and contributed in some part to his misconduct. Nevertheless, the Court also takes into account that at least one of the charges (involving the agreement Respondent had Eppler sign releasing him from liability) bears no causal connection to the personal and emotional troubles he described, and, based on Respondent's statements about the timing of his father's death, some other of the charges (those related to his early interactions with Fields and Fletcher, for example) may not have a temporal nexus to the event-his father's passing-that Respondent describes as precipitating his misconduct.
Finally, Respondent urged the Court to apply mitigating factors of remorse as well as good character or reputation.[12] The Court declines to apply either factor. The Court found Respondent's professions of remorse thin and unconvincing, rooted in the myriad ways his life, rather than his clients' lives, was affected by his misconduct. As for the latter, Respondent offered no support to substantiate application of the good character mitigator, save for his own testimony.
*747 Analysis Under ABA Standards and Colorado Case Law
The Court recognizes the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[13] mindful that "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[14] Though prior cases are helpful by way of analogy, the Court is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.
Here, Respondent converted client funds from Fields, Fletcher, and Harshell. In each of these matters a client paid Respondent a retainer: $3,500.00 in the Fields matter; $3,500.00 in the Fletcher matter; and $5,000.00 in the Harshell matter. But Respondent did not complete work commensurate with the funds provided. In the Fields and Fletcher matters, Respondent even acknowledged that he owed the clients a refund. In all three cases, Respondent kept some portion of the client's unearned fees without authorization. All three clients repeatedly demanded an accounting and a return of unearned fees, yet Respondent never returned any portion of the clients' retainers. In failing to do so, Respondent knowingly converted the funds of these three clients.[15] Absent significant mitigating factors, disbarment is the presumed sanction in Colorado for such knowing conversion of client funds.[16]
Respondent also abandoned Harshell and the client in the Magistrate Connors matter.[17] In these matters, Respondent promised to perform legal work for the clients but then took little or no sustained action. He ceased communicating with the clients for an unreasonable period of time, despite their numerous attempts to contact him. Further, in the Magistrate Connors matters, the client was forced to file a pro se motion to remove Respondent from the case once it became clear that he was no longer representing the client's interests. Case law is clear that when knowing conversion is coupled with abandonment of clients, disbarment is warranted.[18]
The ABA Standards call for disbarment as a presumptive sanction, and case law supports imposition of that discipline. Although significant mitigating factors may overcome the presumption of disbarment, the one applicable mitigator here does not rise to the level of justifying a reduction in the sanction. And while the Court applauds Respondent's decision to participate in the sanctions hearing after entry of default, Respondent's pattern of misconduct and the harm it has occasioned are too serious to justify deviation from the presumed sanction. Respondent must be disbarred.
*748 III. CONCLUSION
Respondent knowingly failed to perform his clients' work and even promised some clients refunds, yet he never returned any unearned fees. In so doing, he abdicated his responsibilities to his clients and converted their money. The Court concludes that Respondent's license to practice law must be revoked.
IV. ORDER
The Court therefore ORDERS :
1. SHANNON CHARLES HOLCOMB , attorney registration number 28675 , will be DISBARRED from the practice of law. The DISBARMENT SHALL take effect only upon issuance of an "Order and Notice of Disbarment."[19]
2. To the extent applicable, Respondent SHALL promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.
3. Respondent also SHALL file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.
4. The parties MUST file any posthearing motions on or Friday, June 1, 2018 . Any response thereto MUST be filed within seven days.
5. The parties MUST file any application for stay pending appeal on or Friday, June 8, 2018 . Any response thereto MUST be filed within seven days.
6. Respondent SHALL pay the costs of this proceeding. The People SHALL file a statement of costs on or before Friday, June 1, 2018 . Any response thereto MUST be filed within seven days.

See C.R.C.P. 251.15(b) ; People v. Richards , 748 P.2d 341, 346 (Colo. 1987).

See C.R.C.P. 251.1(b).

Found in ABA Annotated Standards for Imposing Lawyer Sanctions (2015).

See In re Roose, 69 P.3d 43, 46-47 (Colo. 2003).

Ex. 2.

ABA Annotated Standards for Imposing Lawyer Sanctions xx.

See ABA Standards 9.21 & 9.31.

Respondent was publicly censured on May 20, 2016, in case number 16PDJ043, stemming from Respondent's guilty plea in 2013 to disorderly conduct-unreasonable noise, a petty offense, with a domestic violence enhancer.

ABA Standards 9.22(a)-(d) and (j).

ABA Standards 9.32(c).

Respondent made these representations in his opening statement, though the Court notes the admitted facts suggest that Respondent's father had passed away sometime before July 2016. At one point during his statements (but not during his sworn testimony) he averred that his breakdown occurred in spring 2017; at another point he stated that he suffered a mental breakdown in autumn 2016.

ABA Standards 9.32(l) and (g).

See In re Attorney F. , 285 P.3d 322, 327 (Colo. 2012) ; In re Fischer , 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

In re Attorney F. , 285 P.3d at 327 (quoting In re Rosen , 198 P.3d 116, 121 (Colo. 2008) ).

See People v. Varallo , 913 P.2d 1, 10-12 (Colo. 1996) (establishing that knowing conversion "consists simply of a lawyer taking a client's money entrusted to him, knowing that it is the client's money and knowing that the client has not authorized the taking").

People v. Coyne , 913 P.2d 12, 14 (Colo. 1996) (disbarring a lawyer who misappropriated escrow funds and failed to return unearned funds).

An attorney's agreement to perform services for a client and subsequent failure to do so, coupled with the attorney's failure to communicate with the client, justifies a finding of abandonment. See People v. Shock , 970 P.2d 966, 968 (Colo. 1999) (finding that a lawyer abandoned two clients by failing to complete necessary tasks and failing to communicate with the clients after having agreed to represent them).

People v. Stevenson , 979 P.2d 1043, 1045 (Colo. 1999) (disbarring a lawyer who abandoned a client and knowingly converted several hundred dollars of the client's money); People v. Townshend , 933 P.2d 1327, 1329 (Colo. 1997) (applying ABA Standard 4.41 and collecting cases imposing disbarment for abandonment and conversion); People v. Kuntz , 942 P.2d 1206, 1208-09 (Colo. 1997) (disbarring a lawyer who accepted fees from several clients, performed little to no work on their cases, and then abandoned the clients without returning their funds).

In general, an order and notice of sanction will issue thirty-five days after a decision is entered under C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.